## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROSE COULTER-OWENS,

              Plaintiff,

v.

RODALE, INC.,

              Defendant.

Case No. 2:14-cv-12688
Honorable Victoria A. Roberts
Mag. Judge R. Steven Whalen

### DEFENDANT RODALE INC.'S MOTION TO DISMISS

Defendant Rodale Inc. ("Rodale") hereby moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Specifically, Rodale moves to dismiss the entirety of the Complaint based on Plaintiff's lack of standing, pursuant to Rule 12(b)(1).  Rodale also moves to dismiss Count I for lack of statutory standing and Counts II and III for failure to state a claim, pursuant to Rule 12(b)(6).  In support of this Motion, Rodale submits the attached Brief, which is incorporated herein.

Rodale hereby certifies that pursuant to Local Rule 7.1(a), there was a conference between attorneys for Plaintiff and for Rodale on September 16, 2014 in which Rodale explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

**WHEREFORE**, Defendant Rodale Inc. respectfully requests that this Court enter an Order granting this motion, dismissing this action with prejudice, and granting such other and further relief as this Court deems necessary and proper.

Dated:  September 16, 2014                    Respectfully submitted,

/s/  Anthony T. Eliseuson


Peter B. Kupelian (P31812)                    Natalie J. Spears (admission to be sought)
Carol G. Schley (P51301)                      Anthony T. Eliseuson
CLARK HILL PLC                                Kristen C. Rodriguez (admission to be sought)
500 Woodward Avenue, Suite 3500               DENTONS US LLP
Detroit, MI  48226                            233 South Wacker Drive, Suite 7800
pkupelian@clarkhill.com                       Chicago, IL  60606
cschley@clarkhill.com                         (312) 876-8000
                                              (312) 876-7934 (fax)
                                              natalie.spears@dentons.com
                                              anthony.eliseuson@dentons.com
                                              kristen.rodriguez@dentons.com

*Attorneys for Defendant Rodale Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROSE COULTER-OWENS,

|  |  |
|---|---|
| Plaintiff, | Case No. 2:14-cv-12688<br>Honorable Victoria A. Roberts<br>Mag. Judge R. Steven Whalen |

v.

RODALE, INC.,

Defendant.

## BRIEF IN SUPPORT OF DEFENDANT RODALE INC.'S MOTION TO DISMISS

| | |
|---|---|
| Peter B. Kupelian (P31812) | Natalie J. Spears (admission to be sought) |
| Carol G. Schley (P51301) | Anthony T. Eliseuson |
| CLARK HILL PLC | Kristen C. Rodriguez (admission to be sought) |
| 500 Woodward Avenue, Suite 3500 | DENTONS US LLP |
| Detroit, MI 48226 | 233 South Wacker Drive, Suite 7800 |
| pkupelian@clarkhill.com | Chicago, IL 60606 |
| cschley@clarkhill.com | (312) 876-8000 |
| | (312) 876-7934 (fax) |
| | natalie.spears@dentons.com |
| | anthony.eliseuson@dentons.com |
| | kristen.rodriguez@dentons.com |

*Attorneys for Defendant Rodale Inc.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

LOCAL RULE 7.1 STATEMENT OF ISSUES PRESENTED .............................. v

CONTROLLING AND MOST APPROPRIATE AUTHORITIES ...................... vii

BACKGROUND ................................................................................. 3

    I.     Michigan's Video Rental Privacy Act ................................................. 3

    II.    Defendant Rodale Inc. ........................................................................ 5

    III.   Plaintiff Rose Coulter-Owens and Her Allegations ............................ 6

ARGUMENT ...................................................................................... 8

    I.     Plaintiff Fails to State a Breach of Contract Claim. ............................. 9

    II.    Plaintiff's Unjust Enrichment Claim Should Be Dismissed. .............. 11

    III.   Plaintiff's Complaint Should Be Dismissed for Lack of
          Standing. ............................................................................................. 14

          A.    This Court Lacks Subject Matter Jurisdiction Because
                Plaintiff Does Not Have Standing To Sue. ................................ 15

          B.    Plaintiff Lacks Statutory Standing As Well. ............................. 18

CONCLUSION ................................................................................... 20

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Allor v. DeClark, Inc.*,
   No. 300953, 2012 WL 555779 (Mich. App. Feb. 21, 2012) .............................11

*Ashroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................9, 14

*Beaudry v. TeleCheck Services, Inc.*,
   579 F.3d 702 (6th Cir. 2009) .......................................................16, 19

*Burton v. William Beaumont Hosp.*,
   373 F. Supp. 2d 707 (E.D. Mich. 2005) ..............................................9

*Cain v. Redbox Automated Retail, LLC*,
   981 F. Supp. 2d 674 (E.D. Mich. 2013) .......................................13, 19

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013).......................................................................18

*Cloverdale Equip. Co. v. Simon Aerials, Inc.*,
   869 F.2d 934 (6th Cir. 1989) .............................................................13

*Cohen v. Facebook, Inc.*,
   798 F. Supp. 2d 1090 (N.D. Cal. 2011).............................................19

*Deacon v. Pandora Media, Inc.*,
   Case No. C 11-04674 SBA, 2012 WL 4497796 (N.D. Cal. Sept.
   28, 2012) ............................................................................................19

*Doe v. Chao*,
   540 U.S. 614, 619 (2004).....................................................................18

*In re DoubleClick Inc. Privacy Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001) ...............................................12

*In re Facebook Privacy Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011)...............................................12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)...........................................................................15

*Galaria v. Nationwide Mutual Ins. Co.*,
    No. 13-cv-118, 2014 WL 689703 (S.D. Ohio 2014)..........................18

*Halaburda v. Bauer Publ'g Co.*,
    No. 12-cv-12831, 12-cv-14221, 12-cv-14390, 2013 WL 4012827
    (E.D. Mich. Aug. 6, 2013) ...................................................2, 4, 10, 17

*In re iPhone Application Litig.*,
    2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)...................................12

*In re JetBlue Airways Corp. Privacy Litig.*,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ................................................12

*Kinder v. Meredith Corp.*,
    No. 14-cv-11284, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014) .....2, 5, 10, 19

*McCreary v. Shields*,
    52 N.W. 2d 853 (1952) .....................................................................11

*Rabbah v. Federal Home Loan Mortg. Corp.*,
    No. 12-14599, 2013 WL 153729 (E.D. Mich. Jan. 15, 2013)............13

*Raines v. Byrd*,
    521 U.S. 811 (1997)..........................................................................15

*Roberts v. Hamer*,
    655 F.3d 578 (6th Cir. 2011) ............................................................14

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008).............................................12

*Sterk v. Best Buy Stores, L.P.*,
    No. 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012)............17

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)..........................................................................15

*Thill v. Ocwen Loan Servicing, LLC*,
    13-cv-14151, 2014 WL 1274080 (E.D. Mich. Mar. 31, 2014) ..........10

*Wiley v. Department of Veterans Affairs*,
    176 F. Supp. 2d 747 (E.D. Mich. 2001) ............................................................19

*Willingham v. Global Payments, Inc.*,
    12-cv-01157, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ..................................11

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710 .....................................................3

Michigan Video Rental Privacy Act, Mich. Comp. Laws § 445.1711
    *et seq*. .....................................................................................................*passim*

**Other Authorities**

Video Privacy Protection Act Senate Report No. 100-599, 1988 WL
    243503 (1988)........................................................................................................3

## **LOCAL RULE 7.1 STATEMENT OF ISSUES PRESENTED**

In this putative state wide class action asserting claims under the Michigan Video Rental Privacy Act, MCL § 445.1711, *et seq.* ("Michigan VRPA") (Count I), and related claims for breach of contract (Count II) and unjust enrichment (Count III), the questions presented by this Motion are:

1.      Should this Court dismiss Plaintiff's Complaint for lack of Article III standing pursuant to Rule 12(b)(1) where she has not alleged an injury-in-fact?

**Defendant says:  YES.**

2.      Should this Court dismiss Count I of Plaintiff's Complaint for an alleged violation of the Michigan VRPA for lack of statutory standing pursuant to Rule 12(b)(6) when Plaintiff has not pled any actual damages, which is a required element of the statute?

**Defendant says:  YES.**

3.      Should this Court dismiss Count II of Plaintiff's Complaint for breach of contract pursuant to Rule 12(b)(6) because Plaintiff has failed to identify the contract between her and Rodale, and has also failed to identify the existence of an injury from the breach of any such contract?

**Defendant says:  YES**

4.      Should this Court dismiss Count III of Plaintiff's Complaint for unjust

enrichment pursuant to Rule 12(b)(6) because Plaintiff has failed to allege a loss

that makes Defendant's gain at her expense, and because, in any event, she

received the benefit of the bargain between herself and Rodale?

**Defendant says:  YES**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

**I.     Plaintiff Fails to State a Breach of Contract Claim.**

1.     *Halaburda v. Bauer Publ'g Co.,* No. 12-cv-12831, 12-cv-14221, 12-cv-14390, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) (Steeh, J.).

2.     *Kinder v. Meredith Corp.*, No. 14-cv-11284, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014) (Ludington, J.).

3.     *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707 (E.D. Mich. 2005).

4.     *Willingham v. Global Payments, Inc.*, 12-cv01157, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013).

**II.     Plaintiff's Unjust Enrichment Claim Should be Dismissed.**

1.     *Allor v. DeClark, Inc.*, No. 300953, 2012 WL 555779 (Mich. App. Feb. 21, 2012).

2.     *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011).

3.     *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001).

**III.     Plaintiff's Complaint Should Be Dismissed for Lack of Standing.**

**A.     This Court Lacks Subject Matter Jurisdiction Because Plaintiff Does Not Have Standing To Sue.**

1.     Article III of the United States Constitution.

2.     *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000).

3.     *Raines v. Byrd*, 521 U.S. 811 (1997).

4.     *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009).

5.     *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013).

6.   *Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901
     (N.D. Ill. Oct. 17, 2012).

**B.**   **Plaintiff Lacks Statutory Standing As Well.**

1.   Michigan Video Rental Privacy Act, MCL § 445.1715.

2.   *Doe v. Chao*, 540 U.S. 614 (2004).

3.   *Wiley v. Department of Veterans Affairs*, 176 F. Supp. 2d 747, 757-58
     (E.D. Mich. 2001).

This case concerns the Michigan Video Rental Privacy Act, Mich. Comp. Laws § 445.1711 *et seq.* ("VRPA"), which was passed in 1988, and as its title suggests, was focused on the protection of "video" rental privacy in the wake of the federal "Video Privacy Protection Act" enacted just weeks earlier. For over twenty five years, Michigan's VRPA sat dormant—until very recently. Seizing upon the Act's potential for $5,000 in damages per violation and its language covering disclosure of "other written materials" sold "at retail," counsel for Plaintiff began filing a string of purported class action lawsuits against magazine publishers, claiming VRPA violations. Here, named Plaintiff Rose Coulter-Owens (also a plaintiff in another VRPA case) alleges that she subscribes to *Prevention* magazine, published by Defendant Rodale Inc. ("Rodale"), and that Rodale shares its "subscriber lists" with other entities without informing her of that practice in violation of the VRPA. Plaintiff also asserts tag-along claims for purported breach of contract, and alternatively, unjust enrichment.

There are several issues which ultimately doom this action in its entirety. The reality is that the magazine industry practice of renting subscriber lists predates the VRPA—and even assuming the Act applies, Rodale has complied with the Act. In fact, in a recent decision in this District, addressing the same cookie-cutter allegations against other publishers, the court explicitly raised doubt about the ability of the plaintiffs to ultimately state a claim under the VRPA, finding that

- 1 -

the customer notice exception for disclosure and other defenses were "compelling" but would best be resolved on summary judgment, and dismissing the breach of contract claim at the outset as "nonsensical." *Halaburda v. Bauer Publ'g Co.,* No. 12-cv-12831, 12-cv-14221, 12-cv-14390, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) (Steeh, J.).[1]  The *Halaburda* decision also expressed skepticism about the plaintiffs' lack of injury and standing to initiate this action in the first instance, though allowed them in the federal courthouse door at this stage.  *Id.*

Likewise, here, Rodale fully expects the facts will show serious questions about the applicability of the VRPA in the first place, as well as Plaintiff's ultimate inability to prove a violation of the statute—but Rodale reserves those issues for a later stage, if needed.  For now, Rodale limits this Motion to the breach of contract and unjust enrichment counts, which should be severed from the case immediately for failure to state a claim, as well as on Plaintiff's lack of standing under the VRPA and Article III.  Plaintiff alleges no personal, concrete injury in fact to her at all, let alone harm caused by her *Prevention* subscription, and instead offers only speculative theories.  Accordingly, Rodale respectfully maintains Plaintiff lacks both statutory and Article III standing and raises these issues for this Court's separate consideration and to preserve its position in the record.

---

[1] *Halaburda* was a consolidation of the cases against Bauer, Time, and Hearst. *See also Kinder v. Meredith Corp.*, No. 14-cv-11284, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014) (Ludington, J.) (also dismissing breach of contract claim).

## BACKGROUND

### I.   Michigan's Video Rental Privacy Act

In 1987, during then Judge Robert Bork's Supreme Court nomination

hearings, a reporter for a weekly newspaper in Washington published a "profile"

based on the 146 movies Judge Bork's family had rented from a local video store.

*See* Senate Report No. 100-599, at 5 (1988), available at 1988 WL 243503.  In

response to that incident, the federal government passed the Video Privacy

Protection Act aimed at preventing public disclosure of an individual's movie

rental information.  *Id.*  Two weeks later, Michigan followed suit, passing the

VRPA in December of 1988.[2]

The VRPA, in pertinent part, provides:

> Except as provided in section 3 or as otherwise provided by law,
> a person, or an employee or agent of the person, engaged in the
> business of selling at retail, renting, or lending books or other
> written materials, sound recordings, or video recordings shall not
> disclose to any person, other than the customer, a record or
> information concerning the purchase, lease, rental, or borrowing
> of those materials by a customer that indicates the identity of the
> customer.

MCL § 445.1712.

There are exceptions to the VRPA.  In addition to recognizing exceptions

"otherwise provided by law," the VRPA also expressly sets forth several additional

ones.  Importantly for this matter, the VRPA specifically exempts disclosures made

[2] The federal Video Privacy Protection Act of 1988, 18 U.S.C. § 2710, was signed
into law just weeks prior.

for "the exclusive purpose of marketing goods and services directly to the customer," if the customer is provided with written notice of the ability to "remove his or her name at any time by written notice."  MCL § 445.1713.  These exceptions will play a prominent role in this case, as the facts will show that through its magazines and on its website, Rodale provides a VRPA-compliant notice that its subscriber lists are made available to certain third parties, and also gives its readers instructions on how to opt out of that practice, which a number of consumers elect to do.[3]

Notably, in evaluating a strikingly similar notice to Rodale's that was provided by Time and Hearst to their subscribers, the *Halaburda* court remarked that the notices "certainly appear to comply with the terms of the [VRPA]," and favorably cited the defendants' arguments about website notices, but ultimately found that while the defendants' arguments were "compelling," they were "premature" and "better suited for summary judgment."  *Halaburda v. Bauer Publ'g*, 2013 WL 4012827, at  *8.

Further, according to the plain language of the statute, only those businesses engaged in the business of selling "at retail" are subject to the prohibitions of the

---

[3] For example, in the current issue of *Prevention*, readers are notified as follows:

> We occasionally make our mailing list available to other companies whose products or services might interest you.  If you prefer not to be included, write to Prevention Customer Service, PO Box 26299, Lehigh Velley, PA 18002-6299.

VRPA.  As the *Kinder* court recently explained, this means that if a consumer "purchased her magazine subscription through a third party, rather than directly from [the publisher], she would not have bought them at retail," and therefore, would not be entitled to invoke the VRPA.  *Kinder*, 2014 WL 4209575, at *6.

The VRPA imposes criminal penalties for violations of the statute.  MCL § 445.1714.  In addition, the VRPA also allows "a civil action for damages" to a customer whose record is disclosed in violation of the Act, MCL § 445.1715, and awards those consumers who are damaged as a result of a prohibited disclosure with a minimum of $5,000 per violation.  No civil action or criminal prosecution was brought under the VRPA for nearly twenty-five years after its enactment, until the string of recent VRPA class actions brought by the same Plaintiff's counsel here, including this latest action against Rodale.

## II.  Defendant Rodale Inc.

Rodale is a media company that publishes magazines circulated nationwide.  (Compl. ¶ 1.)  Its publications include some of the most well-known health and wellness lifestyle magazines, including *Prevention*.  (*Id*.)  Founded in 1930, Rodale has been a family owned and run business since its inception and today is one of the largest independent publishers in the country.  (*See id*. at ¶ 8.)  Individuals can subscribe to Rodale magazines through "numerous media outlets, including the Internet, telephone, or traditional mail."  (*Id*. at ¶ 43.)  Rodale provides advertising

space in its magazines, and also rents subscriber lists to certain third parties
pursuant to agreements—a long-standing industry practice of magazine publishers.
(*Id.* at ¶ 2.)

### III.   Plaintiff Rose Coulter-Owens and Her Allegations

Plaintiff Rose Coulter-Owens alleges that she "currently subscribes" to
*Prevention* magazine and that she "directly purchased" her subscription from
Rodale.  (*Id.* at ¶¶ 47; 65.)[4]  That is the extent of her allegations regarding her
subscription.  She does not say when she subscribed, or how she subscribed.

Coulter-Owens' claim against Rodale is that it disclosed what she calls her
"Personal Reading Information (*i.e.,* information that identifies Coulter-Owens as a
*Prevention* subscriber)" to "data mining companies . . . who then supplement that
information with data from their own files" (*id.* at ¶ 50) and that Rodale has sold
"mailing lists containing [her] Personal Reading Information to third parties
including direct-mail advertisers as well as organizations soliciting monetary
contributions, volunteer work, and votes . . . ."  (*id.* at ¶ 51).

The remainder of the Complaint reads more like an essay of sorts, with
citations to articles and other materials regarding the potential hazards to
consumers of data aggregation and data sharing.  However, *none* of the articles
reference or in any way relate to Rodale, or even to magazine subscription

---

[4] Coulter-Owens also serves as the named plaintiff in the separately pending suit in
this District against Time, No. 12-cv-14390.

information.  And nowhere in the Complaint does Coulter-Owens allege that she was subject to any of the potential harms depicted in these unrelated articles.

Instead, Coulter-Owens alleges generically that she has been harmed because she has received unidentified "third party print advertisements and marketing calls to her cellular phone, causing emotional distress . . . and fear that her information will be obtained and misused . . . ." (Compl. ¶ 83.)  The implication, though not alleged, is that she received this marketing as a result of her subscription to *Prevention*.  She further alleges that she purportedly subscribed monetary value to the "confidentiality of [her] Personal Reading Information" (*id.* at ¶ 93) and she was "denied services that [she] paid for and were entitled to receive" because a "portion of the purchase price of each Rodale subscription sold to Plaintiff . . . was intended to ensure the confidentiality" of that information (*id.* at ¶ 94).

Based on these allegations, Plaintiff seeks to represent a statewide class defined as "[a]ll Michigan residents who had their Personal Reading Information disclosed to third parties by Rodale without consent." (*Id.* at ¶ 55.)  In her claim under the VRPA, she seeks an injunction and an award of damages including disgorgement or $5,000, whichever is greater.  (*Id.* at ¶ 84.)  For her breach of contract claim, Plaintiff seeks disgorgement of all profits obtained by Rodale for its

- 7 -

practices (*id.* at ¶ 96), and for her unjust enrichment claim, she seeks restitution of the money obtained by Rodale for its practices at issue (*id.* at ¶ 107).

## ARGUMENT

Though Rodale focuses this Motion on Plaintiff's lack of standing and her breach of contract and unjust enrichment claims, to be clear, Rodale believes that Plaintiff ultimately will not be able to state a claim on the merits for a violation of the VRPA.  Based on Rodale's actual practices as well as the notices provided to readers of *Prevention* magazine and the opportunity to opt-out from the practices Plaintiff complains—notices comparable to those that the *Halaburda* court already signaled were compliant with the VRPA—Plaintiff ultimately will be unable to maintain her claim that she was never informed about Rodale's practices or that the disclosures otherwise violated the VRPA in any event.  Questions also remain as to whether the VRPA, and its "at retail" provision, can and should even apply to magazine subscriptions, which, like newspapers, contain a variety of articles and are distributed openly through the mail with the title and address label of the subscriber in plain view of hundreds of strangers.  Further, because Plaintiff is so vague about *how* she subscribed to *Prevention*, there is an issue of whether her subscription even qualifies under the VRPA if it was not bought "at retail," as indicated by the *Meredith* decision.

Rodale does not raise the above issues and other issues concerning the lack of a VRPA violation now at the motion to dismiss stage, but reserves the right to do so at the appropriate juncture. Putting aside the eventual factual failings on the merits of Plaintiff's VRPA claim, however, there are still other fundamental problems with her Complaint that this Court should address here and now on this Rule 12 motion to dismiss. Her breach of contract claim fails because she does not even identify a contract, or any damages resulting from the breach of that non-existent contract. Similarly, her unjust enrichment claim fails because she has not alleged a legally cognizable loss, and therefore fails to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, Plaintiff lacks statutory standing to bring her VRPA claim, as she fails to allege actual damages, a required element of the statute, and also lacks Article III standing to even bring her claims, as she has not pled any concrete, injury-in-fact.

## I.   **Plaintiff Fails to State a Breach of Contract Claim.**

To state a claim for breach of contract under Michigan law, a plaintiff must plead and prove: "(1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, (4) the breach caused the other party injury." *Burton v. William*

*Beaumont Hosp.*, 373 F. Supp. 2d 707, 718 (E.D. Mich. 2005) (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999)).

Plaintiff's Complaint lacks of any allegations regarding the very first element of the breach of contract claim: the existence of a contract between her and Rodale.  This is fatal to a breach of contract claim, as two other courts in the District have held based on *identical* allegations in *Halaburda* and *Kinder*, dismissing the breach of contract counts **with prejudice** on this very basis.

Here, all that Plaintiff has alleged is that her subscription "incorporated" the "laws existing at the time and place of the making of a contract," "including the VRPA," and that Rodale breached the contract arising out of that incorporation. (*Compare* Compl. ¶¶ 89, 92 *with Halaburda* Am. Complt., No. 12-cv-12831, Doc. 9, ¶¶ 76, 79 and *Kinder* Complt., No. 14-cv-11284, Doc. 1,  ¶¶ 84, 87.)  But as the *Kinder* decision explained, Coulter-Owens "cannot piggy-back a breach of contract claim without identifying a specific contract at issue."  *Kinder*, 2014 WL 4209575, at *6.  That attempt, in the words of the *Halaburda* court, is simply "nonsensical." 2013 WL 4012827, at *8.

Indeed, courts routinely dismiss breach of contract claims where, as here, the plaintiff does not identify the contract or its terms.  *E.g.*, *Thill v. Ocwen Loan Servicing, LLC*, 13-cv-14151, 2014 WL 1274080, *4 (E.D. Mich. Mar. 31, 2014) (plaintiff's allegations "do not identify the specific terms of the contract allegedly

breached"). As a result, because Plaintiff has not and cannot identify the contract allegedly breached by Rodale, her breach of contract claim must be dismissed with prejudice.

Beyond this fundamental failing, Plaintiff also does not and cannot allege the final element of a breach of contract claim: the existence of an injury resulting from the breach. The only purported injury alleged here is "in the form of the value Coulter-Owens and other Class members paid for and ascribed to the confidentiality of their Personal Reading Information" because they were "denied services that they paid for and were entitled to receive." (Compl. ¶¶ 93-94.) But courts have held that allegedly private information has no economic value. *E.g. Willingham v. Global Payments, Inc.*, 12-cv-01157, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ("Plaintiffs' [personal information] does not have an inherent monetary value."); *see also infra* at Section II. Accordingly, Plaintiff's breach of contract fails for this independent reason as well.

## II.    <u>Plaintiff's Unjust Enrichment Claim Should Be Dismissed.</u>

Under Michigan law, unjust enrichment is the retention of "money or benefits which in justice and equity belong to another." *McCreary v. Shields*, 52 N.W. 2d 853, 855 (1952) (citation omitted). To state a claim, a plaintiff must suffer a loss that makes the defendant's gain at her expense. *See Allor v. DeClark, Inc.*, No. 300953, 2012 WL 555779, at *2 (Mich. App. Feb. 21, 2012).

Rodale recognizes that the decisions on the other publishers' motions to dismiss held that the plaintiffs' similarly worded allegations in those cases stated a claim for unjust enrichment at this stage.  Respectfully, Rodale submits that this Court should find that Plaintiff cannot maintain an unjust enrichment claim because she has not sufficiently alleged she suffered a loss, nor is she entitled to any proceeds Rodale received from the practices alleged.

To start, Plaintiff has lost nothing of value.  She claims that she suffered "actual damages . . . in the form of the value Plaintiff paid for and ascribed to the confidentiality of [her] Personal Reading Information."  (Compl. ¶ 103.)  But that type of allegation of "loss" has been roundly rejected by federal courts because personal information does not "equate[] to money or property" and the mere disclosure of personal data is insufficient to establish injury in fact.  *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 n.10 (N.D. Cal. 2011).  *See also In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("[T]here is absolutely no support for the proposition that the personal information of an individual . . . had any value for which that [individual] could have expected to be compensated."); *In re iPhone Application Litig.*, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (similar principle); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) ("[A]lthough demographic

information is valued highly . . the value of its collection has never been considered an economic loss to the subject. . . . [W]e are unaware of any court that has held the value of this collected information constitutes damage to consumers.").  Thus, as a matter of law, Plaintiff has not suffered a loss or expense to her that is subject to an unjust enrichment claim.

Additionally, as the Sixth Circuit has recognized in applying Michigan law, a claim for unjust enrichment fails when a party receives the benefit of the bargain. Here, Plaintiff got what she paid for: a subscription to *Prevention*.  *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 939-40 (6th Cir. 1989) (holding actions did not constitute unjust enrichment where the parties both received the benefit of the bargain to which they agreed even if defendant received significant profit from the transaction); *see also Rabbah v. Federal Home Loan Mortg. Corp.*, No. 12-14599, 2013 WL 153729, at *4-5 (E.D. Mich. Jan. 15, 2013) (dismissing unjust enrichment claim under Rule 12(b)(6) with prejudice relating to a foreclosure sale because no "inequity" existed when any benefit received by defendant was part of the parties' agreed upon transaction).

In fact, in another decision under the VRPA against a video retailer, the court "expresse[d] skepticism" as to whether this same theory could be proven through discovery, but ultimately decided to "take Plaintiffs' Complaint at its word."  *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 687 (E.D.

Mich. 2013) (Rosen, J.). Respectfully, however, pursuant to the principles articulated in *Iqbal* and *Twombly*, this Court is not required to take Plaintiff's conclusory allegations at their word when they fail to plausibly state a right to relief. As a result, Plaintiff cannot state a claim for unjust enrichment.

## III. Plaintiff's Complaint Should Be Dismissed for Lack of Standing.

To proceed in federal court under a statute such as the VRPA, a plaintiff must have both Article III standing at the outset, and statutory standing as well.[5] Here, Plaintiff has neither. Rodale acknowledges that courts in this District that have considered the issue of statutory and Article III standing under VRPA have rejected other defendants' similar arguments; however, Rodale respectfully submits that decisions reaching the opposite result are not binding and rely on Sixth Circuit precedent that is either distinguishable or otherwise conflicts with Supreme Court precedent and is wrongly decided. Rodale further raises these fundamental issues—given the serious threshold question of standing and split of authority throughout the country on this point—in order to preserve its arguments in the record.

---

[5] Lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6), whereas a lack of Article III standing requires dismissal under Rule 12(b)(1). *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011).

### A.   This Court Lacks Subject Matter Jurisdiction Because Plaintiff Does Not Have Standing To Sue.

To have standing under Article III, plaintiff must have suffered an injury in fact; a mere violation of a statute is not enough to open the federal courthouse doors to a plaintiff.  Yet that is all Plaintiff claims here, coupled with only conclusory allegations of harm.  As a result, the entirety of her claims should be dismissed pursuant to Rule 12(b)(1).

It is beyond debate that to establish Article III standing, and thus federal jurisdiction, a plaintiff must show that "(1) [she] has suffered an 'injury in fact' that is a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical; 2) that the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  Further, the Supreme Court has held that "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.").

What *is* currently subject to debate is whether a statutory violation alone is sufficient to create Article III standing.  Some courts have embraced the minority rule of finding standing without factual injury—a position that is subject to a pending Petition for a Writ of Certiorari[6]—and one that Rodale respectfully submits is incompatible with the Supreme Court precedent discussed above. Though the Sixth Circuit has addressed a similar Article III standing argument in passing in the context of the Fair Credit Reporting Act, in *Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702, 707 (6th Cir. 2009) (finding that "[n]o Article III (or prudential) standing problem arises, it bears adding, if Beaudry is permitted to file this claim" even though she was not injured from the alleged statutory violation), Rodale submits that *Beaudry* is factually distinguishable as discussed herein (*see infra* at Section III.A), and otherwise incompatible with Supreme Court precedent.

Based on the above controlling authorities from the Supreme Court, Plaintiff cannot premise her Article III standing on a bare violation of a statute alone—an issue that may again be before the Supreme Court in the near future.  In fact, in addressing the federal counterpart to the VPRA, the Video Privacy Protection Act, the Northern District of Illinois specifically rejected the plaintiff's claim that an alleged violation of the statute would alone confer Article III standing, finding that "while Congress is permitted to expand standing to the extent permitted under

---

[6] *See Spokeo, Inc. v. Robins*, No. 13-1339 (U.S. Sup. 2014).

Article III, Congress cannot abrogate the basic standing requirement that an individual suffer an actual redressable injury-in-fact." *Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901, at *5 (N.D. Ill. Oct. 17, 2012).

Even the *Halaburda* court "ha[d] some hesitation in finding that these allegations meet the definition of an injury in fact, which the Supreme Court has described as 'an invasion of a legally protected interest which is . . . concrete and particularized,' and an 'irreducible constitutional minimum of standing.'" *Halaburda*, 2013 WL 4012827, at *4 (E.D. Mich. Aug. 6, 2013). Ultimately, however, the *Halaburda* court found it could not distinguish the case from the Sixth Circuit precedent in *Beaudry* and was compelled to find Article III jurisdiction existed even with plaintiffs' lack of actual injury. But, the decisions of other District Courts are not binding on this Court, and, in this respect, Rodale urges this Court to follow Supreme Court precedent to find that the "hard floor" of Article III jurisdiction—an injury in fact—has simply not been pled or met here.

Further, to the extent Plaintiff will argue that her Complaint does allege an injury in fact beyond just a violation of the VRPA, her allegations of purported injury are insufficient to confer Article III standing. She claims she suffers "irritation, aggravation, anxiety, and fear that her information will be obtained and misused by thieves and scammers" (Compl. ¶ 78)—but the Supreme Court is clear that a plaintiff "cannot manufacture standing merely by inflicting harm on [herself]

- 17 -

based on fears of hypothetical future harm." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013).  Plaintiff also claims she was "deprived" of the "full value" of her "paid-for subscriptions."  (Compl. ¶ 80.)  But courts routinely reject the notion that the value of personal information is diminished by disclosure alone— *see, e.g.*, *Galaria v. Nationwide Mutual Ins. Co.*, No. 13-cv-118, 2014 WL 689703, at *9 (S.D. Ohio 2014) ("finding that the loss of privacy alone constitutes an injury sufficient to confer standing . . . would mean that any time a plaintiff's [personal information] has been exposed as a result of a data breach, he would have standing to sue—regardless of whether . . . the plaintiff ever suffers adverse consequences from exposure").  Thus, Plaintiff's overpayment theory is simply a flawed attempt to recast this otherwise non-viable basis for standing.

## B.   Plaintiff Lacks Statutory Standing As Well.

Even if Article III standing were met, Plaintiff's VRPA claim should still be dismissed pursuant to Rule 12(b)(6) because she has failed to allege actual damages, and therefore lacks statutory standing to sue under the VRPA itself.

The VRPA expressly requires a plaintiff asserting a civil claim to have been "damage[d]," and although the statute provides a minimum quantification of such damages, $5,000, it does not provide for any award without actual damages having occurred—just as numerous courts have held addressing similarly worded statutes. *Compare* MCL § 445.1715 *with Doe v. Chao*, 540 U.S. 614, 619 (2004) (plaintiff

must demonstrate actual damages under Privacy Act of 1974 to recover under statute that provides recovery for "actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery received less than the sum of $1,000"); *Wiley v. Department of Veterans Affairs*, 176 F. Supp. 2d 747, 757-58 (E.D. Mich. 2001) (same principle); *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (dismissing claims because the minimum statutory damages amount did not absolve plaintiff from pleading and proving actual injury where statutory language stated "the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use").

The VRPA therefore stands in contrast to the Fair Credit Reporting Act ("FCRA"), a very different statute with a different structure, language, and purpose, which was examined in *Beaudry,* 579 F.3d 702.  *Beaudry* was relied upon in *Halaburda* to deny defendants' motions to dismiss on standing grounds, and *Halaburda* was relied upon in turn by subsequent courts reaching this same issue.[7] In *Beaudry,* the Sixth Circuit found that the FCRA did not require the plaintiff to

---

[7] *See Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 681-82 (E.D. Mich. 2013); *Kinder v. Meredith,* 2014 WL 4209575, at *2 (relying on *Cain*); *see also Deacon v. Pandora Media, Inc.*, Case No. C 11-04674 SBA, 2012 WL 4497796, at *4 (N.D. Cal. Sept. 28, 2012) (concluding in dicta without analysis regarding the specific language or other statutes with similar language that the Michigan VRPA does not require an allegation of actual damages).

allege actual injury, where the FCRA imposed a "willfulness" requirement, providing that "any person who *willfully* fails to comply [with the act] is liable to that consumer in an amount equal to the sum of . . . any actual damages sustained by the consumer as a result of the failure **or** damages of not less than $100 and not more than $1,000." Thus, the text of the FCRA did not require the plaintiff to allege actual damages.

However, the VRPA provides that a defendant shall be liable "in a civil action *for damages* to the customer." MCL § 445.1715.  As such, the VRPA imposes liability only "*for damages*" whereas the FCRA defines liability in terms of *either* actual damages or statutory damages. Thus, without having sufficiently pled actual damages, Plaintiff separately lacks statutory standing under the VRPA.

## CONCLUSION

For all of the reasons stated herein, Defendant Rodale Inc. respectfully asks that this Court dismiss this matter for lack of standing pursuant to Rule 12(b)(1), or to the extent this Court deems it has subject matter jurisdiction over this case, Rodale requests that this Court dismiss Count I for lack of Plaintiff's statutory standing, and dismiss Counts II and III for failure to state a claim, pursuant to Rule 12(b)(6).

Dated: September 18, 2014      Respectfully submitted,

/s/ Anthony T. Eliseuson
One of the Attorneys for Defendant
Rodale Inc.

| | |
|---|---|
| Peter B. Kupelian (P31812) | Natalie J. Spears (admission to be sought) |
| Carol G. Schley (P51301 | Anthony T. Eliseuson |
| CLARK HILL PLC | Kristen C. Rodriguez (admission to be sought) |
| 500 Woodward Avenue, Suite 3500 | DENTONS US LLP |
| Detroit, MI  48226 | 233 South Wacker Drive |
| pkupelian@clarkhill.com | Suite 7800 |
| cschley@clarkhill.com | Chicago, IL  60606 |
| | (312) 876-8000 |
| | (312) 876-7934 (fax) |
| | natalie.spears@dentons.com |
| | anthony.eliseuson@dentons.com |
| | kristen.rodriguez@dentons.com |

## <u>CERTIFICATE OF SERVICE</u>

Anthony T. Eliseuson, an attorney, hereby certify that on September 18, 2014, a copy of the foregoing was served via the CM/ECF filing system, which send notification to the attorneys of record.

<u>/s/ Anthony T. Eliseuson</u>

82898485\V-4