# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

ROSE COULTER-OWENS,

        Plaintiff,

v.

RODALE INC.,

        Defendant.

Case No. 2:14-cv-12688
Honorable Victoria A. Roberts
Mag. Judge R. Steven Whalen

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Peter B. Kupelian (P31812)
Carol G. Schley (P51301
CLARK HILL PLC
151 S. Old Woodward, Suite 200
Birmingham, MI 48009
(248) 530-6338
(248) 988-2312 (fax)
pkupelian@clarkhill.com
cschley@clarkhill.com

Natalie J. Spears
Anthony T. Eliseuson
Kristen C. Rodriguez
DENTONS US LLP
233 South Wacker Drive, Suite 7800
Chicago, IL  60606
(312) 876-8000
(312) 876-7934 (fax)
natalie.spears@dentons.com
anthony.eliseuson@dentons.com
kristen.rodriguez@dentons.com

*Attorneys for Defendant Rodale Inc.*

Plaintiff's opposition spends 19 pages arguing a point she claims is not subject to serious debate—namely, whether an alleged statutory violation alone confers Article III standing. The ink spilled is telling. Not only have the other courts to review this issue under the VRPA expressed reluctance in finding standing, there is a Petition for Certioriari on this very issue pending before the Supreme Court. Rodale respectfully submits that a concrete, particularized harm is required for Article III standing beyond an alleged statutory violation and that Plaintiff's hollow allegations of harm do not suffice.

Plaintiff's opposition relegates the main issues raised by Rodale's Motion to Dismiss regarding the flaws with her common law claims for breach of contract and unjust enrichment to the end of her brief, and fails to salvage either. In fact, the same authority Plaintiff relies upon for her standing arguments resoundingly dismissed the *identical* breach of contract count against other magazine publishers as "nonsensical"—a point she fails to acknowledge, let alone rebut.

I.      **Plaintiff Lacks Both Article III And Statutory Standing.**

Plaintiff asserts that Rodale has attempted to "manufacture" some sort of debate about whether a statutory violation allegation alone is sufficient to create Article III standing. (Resp. at 13-14.) Yet, a Petition of Certiorari is currently before the Supreme Court asking it to review this very question in one of Plaintiff's attorneys' other cases. *See* Brief for Petitioner, *Spokeo Inc. v. Robins*,

No. 13-1339, 2014 WL 1802228 (U.S. May 1, 2014). In fact, in the Brief for the Petitioner and by certain *amici*, the parties specifically note that resolving this question could impact cases brought under the VRPA, and its federal counterpart, the Video Privacy Protection Act. *Id.* at *16-19; *see also* Amici Brief of eBay, Facebook, Google, and Yahoo!, 2014 WL 2582797, at *17-18 (U.S. June 6, 2014) (citing *Halaburda v. Bauer Publishing Co., L.P.*, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) as representative of the "confusion and inconsistent rulings" existing among district courts on this issue).[1] Three weeks ago, the Supreme Court notably asked the Solicitor General to weigh in on the issue. 2014 WL 4956804 (U.S. Oct. 6, 2014).

Thus, while it is true that the two other cases in this District have found under similar facts that Article III standing was satisfied—as Rodale fully noted in its Opening Brief—the reality is that the question is one of serious debate, and one Rodale is entitled to raise and this Court is entitled to evaluate independently. Indeed, even the *Halaburda* court had "some hesitation in finding that [plaintiff's] allegations meet the definition of an injury in fact, which the Supreme Court has

---

[1] *Compare also*, *e.g.*, *David v. Alphin*, 704 F.3d 327, 338-39 (4th Cir. 2013) (refusing to find that a "deprivation of [a] statutory right . . . is sufficient to constitute an injury-in-fact for Article III standing") *with Sterk v. Redbox Automated Retail, LLC*, 2014 WL 5369416 (7th Cir. Oct. 23, 2014) (summarily finding Article III standing based solely on an allegation of a violation of the federal Video Privacy Protection Act, but affirming judgment for defendant on the merits).

described as 'an invasion of a legally protect interest which is . . . concrete and particularized,' and an 'irreducible constitutional minimum of standing.'" *Halaburda*, 2013 WL 4012827, at *4 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Likewise, the court in *Cain v. Redbox Automated Retail, LLC* "echo[ed] [the *Halaburda* court's] 'hesitation' with regards to whether Plaintiffs meet the 'injury-in-fact' definition." 981 F. Supp. 2d 674, 683 (E.D. Mich. 2013). But notwithstanding these courts' "reluctance" to find defendants could potentially be liable for $5,000 per violation despite the lack of injury in fact allegations, both felt compelled to find Article III standing because they could not "sufficiently distinguish" *Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702 (6th Cir. 2009). *Halaburda*, 2013 WL 4012827, at *5; *Cain*, 981 F. Supp. 2d at 683.

Rodale respectfully submits that interpreting *Beaudry* like the *Halaburda* and *Cain* courts did is contrary to Supreme Court precedent that confirms the legislature simply "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997); *see also Lujan*, 504 U.S. at 578 (Congress may only create remedies for "de facto injuries").

Hedging her own bets on the issue, Plaintiff argues that even if an injury were required, she also has pled "economic loss" in the form of her overpayment for her subscription to *Prevention*. (Resp. at 15-16.) That is not an injury in fact;

3

it's an after-the-fact lawyer's construct.  Nor is it enough to overcome the bulk of authority rejecting the argument that personal information supposedly has diminished "economic" value because of disclosure (*see* Rodale Br. at 18).[2]

Moreover, Plaintiff's bare-bone allegations as to this "overpayment" theory do not pass the rigor imposed by *Iqbal* and *Twombly* and simply cannot serve as the basis for plausibly alleging an actual injury.  There are no allegations in her Complaint as to the value of Plaintiff's personal information; nor any allegations explaining how disclosure deprived her of that value; in fact, there are no allegations as to what representations by Rodale even caused the alleged overpayment in the first instance.[3]  Further, Plaintiff's cases are all distinguishable because in those cases the defendant made some sort of representation that *caused* the overpayment; yet there are no such allegations here.  (Resp. at 16-17.)

Finally, even if Plaintiff had alleged enough for Article III standing, there remains a serious question of statutory standing under the VRPA, namely, whether

---

[2] On this point, Plaintiff attacks Rodale for citing *In re Facebook Privacy Litigation*, 791 F. Supp. 2d 705, 715 n.10 (N.D. Cal. 2011), for a ruling that had been overturned by the Ninth Circuit.  In actuality, however, Rodale cited that case for a separate proposition in the context of the unjust enrichment claim (that personal information does not equate with "money or property" (Rodale Br. at 12)), a point on which the Ninth Circuit *affirmed* in its unpublished, non-precedential opinion.  572 F. App'x 494, 494 (9th Cir. 2014)

[3] Notably, the "recent studies" cited by Plaintiff that supposedly confirm consumers "price privacy into their purchases" are actually Plaintiff's counsel's own expert reports in a wholly unrelated matter.  (Resp. at 17 n.12.)

4

she ultimately must prove—and not just allege—actual damages to potentially recover $5,000 per violation. Rodale submits that in enacting the VRPA—a criminal statute with civil remedies—the legislature's use of the express words that liability is available "in a civil action for *damages* to the consumer" means what it says: that damages must be shown for recovery.[4] *See* MCL § 445.1715 (emphasis added). Otherwise, to allow a plaintiff to recover thousands of dollars without showing any "actual damages" means the statute would authorize "giveaways to plaintiffs with nothing more than 'abstract injuries.'" *Doe v. Chao*, 540 U.S. 614, 625-26 (2004) (internal quotation omitted). This Court can and should decline to do so.

## II.  Plaintiff Has No Breach Of Contract Claim.

*Both courts* to consider the identical breach of contract allegations against magazine publisher defendants under the VRPA have dismissed the breach of contract claims with prejudice. *Halaburda*, 2013 WL 4012827, at *8, 9; *Kinder v. Meredith Corp.*, 2014 WL 4209575, at *6, 7 (E.D. Mich. Aug. 26, 2014). Plaintiff does not even bother to address these decisions, let alone attempt to distinguish them in her Response. That is because she cannot.

---

[4] The fact that the same undersigned counsel made the "verbatim" argument in another VRPA case is neither here nor there. (*See* Resp. at 9-10.) This Court is entitled to evaluate this threshold issue anew.

There is no contract alleged in her Complaint that required Rodale to refrain from sharing Plaintiff's personal information. The only way that Plaintiff attempts to impose this term of a purported contract is by claiming that the laws in place at the time of the execution of the contract are subsumed within it. But that argument, in the words of the *Halaburda* court, is "nonsensical." 2013 WL 4012827, at *8; *accord Kinder,* 2014 WL 4209575, at *6. For the same exact reason, the breach of contract claim fails in this case too. Further, while Rodale submits there also is insufficient injury here to sustain damages under a breach of contract theory (Rodale Br. at 9-11), this Court need not even reach that inquiry because the answer to the threshold question of whether there is even a contract here is a resounding "No."

### III. Plaintiff's Unjust Enrichment Claim Fails.

Plaintiff's unjust enrichment claim is a stretch at best. Even accepting her allegations that she "expected" her information to be kept confidential as a result of her "subscription payment," Plaintiff has offered no allegations as to why or how she came to that expectation—especially given the very public way magazine subscriptions are distributed through the mail, with the name and address of the subscriber on the front of the magazine. Her allegations are simply insufficient to "'state a claim to relief that is plausible on its face.'" *Ashroft v. Iqbal*, 556 U.S.

6

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Likewise, Plaintiff's allegations of purported "loss" itself are similarly threadbare, as well as highly questionable as reflected in the numerous decisions rejecting the argument that alleged "loss of confidentiality" amounts to a legally cognizable loss of "money" or "benefits". (*See* Rodale Br. at 12-13.)[5]

Thus, while other courts in this District have found that similar allegations are enough to sustain an unjust enrichment claim, Rodale urges this Court to independently review the issue and find that Plaintiff's unjust enrichment claim—based on the contrived argument that she expected privacy to be a part of her magazine subscription cost—should not be allowed to go forward.

## **CONCLUSION**

For all of the reasons stated herein and those stated in its opening Brief, Defendant Rodale Inc. respectfully asks that this Court grant its Motion to Dismiss.

Dated: October 30, 2014            Respectfully submitted,

/s/ Natalie J. Spears
One of the Attorneys for Defendant
Rodale Inc.

---

[5] The appellate case Plaintiff cites as support is readily distinguishable because there, the defendant allegedly used portions of the premiums paid to cover the administrative costs of data breach security but then failed to implement those security measures; here, there are no such allegations that Rodale used a portion of the subscription price for confidentiality purposes. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012).

7

## **CERTIFICATE OF SERVICE**

I, Natalie J. Spears, an attorney, hereby certify that on October 30, 2014, a copy of the foregoing was served via the CM/ECF filing system, which sends notification to the attorneys of record.

/s/ Natalie J. Spears