## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ROSE COULTER-OWENS,<br><br>        Plaintiff,<br><br>v.<br><br>RODALE, INC.,<br><br>        Defendant. | Case No.  2:14-cv-12688<br><br>Honorable Robert H. Cleland<br><br>**LR 9.1(b) Claim of<br>Unconstitutionality<br>of Michigan State Statute** |

## DEFENDANT RODALE, INC.'S ANSWER AND ADDITIONAL DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT

Defendant Rodale Inc. ("Rodale") hereby answers Plaintiff's Class Action

Complaint as follows:

### NATURE OF THE CASE

1.    Rodale publishes some of the most widely circulated magazines in the United States, including *Men's Health, Women's Health, Runner's World*, and *Prevention*.

**ANSWER:**  Rodale admits that it publishes magazines, including the

magazines set forth in Paragraph 1 and denies the remaining allegations contained

in Paragraph 1.

2.    To supplement its sales and advertising revenues, Rodale also sells its subscribers' personal information—including their full names, titles of magazines subscribed to, and home addresses (collectively "Personal Reading Information"), as well as myriad other personal, lifestyle, and demographic information such as gender, age, ethnicity, income, net worth, religion, parental status, charitable donations, and even health conditions—to data miners and other third parties.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 2.

1

3.     Rodale's disclosure of such personal, demographic, and lifestyle information is problematic because it allows for highly specific targeting of groups of individuals.  For example, anyone could buy from Rodale a customer list with the names and addresses of all *Prevention* subscribers who are single, over age 80, own homes, suffer from arthritis, and donate to international aid groups.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 3.

4.     While Rodale profits handsomely from such practices, it does so at the expense of its subscribers' privacy rights—Rodale does not obtain its customers' consent prior to selling their Personal Reading Information.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 4.

5.     By selling its customers' Personal Reading Information without their consent, Rodale not only disregards its customers' privacy rights, it also violates Michigan's Video Rental Privacy Act, M.C.L. § 445.1712 ("VRPA"), which prohibits companies from disclosing without permission any record or information concerning a customer's purchase of written materials, if the record identifies the customer.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 5.

6.     Accordingly, Plaintiff brings this Class Action Complaint against Rodale for its intentional and unlawful disclosure of its customers' Personal Reading Information in violation of the VRPA, for breach of contract, and, in the alternative to breach of contract, for unjust enrichment.

**ANSWER:**  Rodale admits that Plaintiff purports to bring this Complaint against Rodale as a putative class action, but denies that the claims alleged can properly proceed as a class action and denies that Plaintiff or any putative class member has any claim against Rodale, and denies the remaining allegations contained in Paragraph 6.

2

## PARTIES

7.     Plaintiff Rose Coulter-Owens is a natural person and citizen of the State of Michigan.

**ANSWER:**  Rodale lacks knowledge and information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 7, and therefore

denies them on that basis.

8.     Defendant Rodale, Inc. is a Pennsylvania corporation with its principal place of business at 400 South Tenth Street, Emmaus, Pennsylvania 18098.  Rodale conducts business throughout this District, the State of Michigan, and the United States.

**ANSWER:**  Rodale admits the allegations contained in Paragraph 8.

## JURISDICTION AND VENUE

9.     This Court has personal jurisdiction over Rodale because it is registered to do, and regularly does, business in Michigan, including soliciting business from, and entering into transactions with, Michigan consumers.  Further, the unlawful conduct alleged in the Complaint occurred in, was directed at, and/or emanated from, Michigan.

**ANSWER:**  Rodale admits that this Court has personal jurisdiction over

Rodale in this case, and that Rodale does business in Michigan, but denies the

remaining allegations contained in Paragraph 9.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because at least one Class member is a citizen of a different state than Defendant, the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and none of the exceptions under that subsection apply to this action.

**ANSWER:**  Rodale admits that this Court has statutory subject matter

jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), but denies that there is

Article III subject matter jurisdiction because there is no case or controversy given

Plaintiff has not suffered any injury in fact and therefore lacks standing.

11.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claim occurred in this District. 28 U.S.C. § 1391(b)(2).  Venue is additionally proper because Plaintiff Coulter-Owens resides within this District (in Lapeer County, Michigan), and Defendant conducts significant business in this District, including soliciting consumer business and entering into consumer transactions.

**ANSWER:**  Rodale admits venue is proper in this Court, and that it has

subscribers in this District.  Rodale states it lacks knowledge and information

sufficient to form a belief as to where Plaintiff resides.  Rodale denies the

remaining allegations contained in Paragraph 11.

## FACTUAL BACKGROUND

12.     In 1988, members of the United States Senate warned that records of consumers' purchases and rentals of audiovisual and written materials offer "a window into our loves, likes, and dislikes," and that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599 at 7–8 (1988) (statements of Sens. Simon and Leahy, respectively).

**ANSWER:**  Rodale refers to the cited Senate Report for its actual and

complete contents and denies any allegations or characterizations inconsistent

therewith.  Rodale denies the remaining allegations contained in Paragraph 12.

13.     Recognizing the need to further protect its citizens' privacy rights, Michigan's legislature enacted the VRPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of certain materials," by prohibiting companies from disclosing certain types of sensitive consumer information.  H.B. No. 5331, 1988 Mich. Legis. Serv. 378 (West).

4

**ANSWER:**  Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith. Rodale denies the remaining allegations contained in Paragraph 13.

14.     Section 2 of the VRPA states:

> [A] person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials... *shall not disclose* to any person, other than the customer, a record or information concerning the purchase... of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712 (emphasis added).

**ANSWER:**  Rodale admits that Paragraph 14 contains an excerpt from a section of the VRPA, but denies that it is the complete text of the statute.  Rodale denies any remaining allegations contained in Paragraph 14.

15.     Michigan's protection of reading information reflects the "gut feeling that people ought to be able to read books and watch films without the whole world knowing," and recognizes that "[b]ooks and films are the intellectual vitamins that fuel the growth of individual thought.  The whole process of intellectual growth is one of privacy—of quiet, and reflection.  This intimate process should be protected from the disruptive intrusion of a roving eye."  S. Rep. No. 100–599, at 6 (Statement of Rep. McCandless).

**ANSWER:**  Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith. Rodale denies the remaining allegations contained in Paragraph 15.

16.     As Senator Patrick Leahy recognized in proposing the Video and Library Privacy Protection Act (later codified as the Video Privacy Protection Act, 18 U.S.C. § 2710), "[i]n practical terms our right to privacy protects the choice of

5

movies that we watch with our family in our own homes.  And it protects the selection of books that we choose to read."  134 Cong. Rec. S5399 (May 10, 1988).

**ANSWER:**  Rodale refers to the cited Congressional Record for its actual and complete contents and denies any allegations or characterizations inconsistent therewith.  Rodale denies the remaining allegations contained in Paragraph 16.

17.    Senator Leahy also explained why choices in movies and reading materials are so private:  "These activities are at the core of any definition of personhood.  They reveal our likes and dislikes, our interests and our whims.  They say a great deal about our dreams and ambitions, our fears and our hopes.  They reflect our individuality, and they describe us as people."  *Id.*

**ANSWER:**  Rodale refers to the cited Congressional Record for its actual and complete contents and denies any allegations or characterizations inconsistent therewith.  Rodale denies the remaining allegations contained in Paragraph 17.

18.    Michigan's passage of the VRPA also established as a matter of law "that a person's choice in reading, music, and video entertainment is a private matter, and not a fit subject for consideration by gossipy publications, employers, clubs, or anyone else for that matter."  *Privacy*:  *Sales, Rentals of Videos, etc*., House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989 (attached hereto as Exhibit A).

**ANSWER:**  Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith.  Rodale denies the remaining allegations contained in Paragraph 18.

19.    Despite the fact that thousands of Michigan residents subscribe to Rodale publications, Rodale disregards its legal responsibility by systematically violating the VRPA.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 19.

20.     In 2001, Federal Trade Commission ("FTC") Commissioner Orson Swindle remarked that "the digital revolution... has given an enormous capacity to the acts of collecting and transmitting and flowing of information, unlike anything we've ever seen in our life . . . [and] individuals are concerned about being defined by the existing data on themselves."[1]

**ANSWER:**  Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith. Rodale lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 and therefore denies them on that basis.

21.     More than a decade later, Commissioner Swindle's comments ring truer than ever, as consumer data feeds an information marketplace that supports a $26 billion dollar per year online advertising industry in the United States.

**ANSWER:**  Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith. Rodale lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 and therefore denies them on that basis.

22.     The FTC has also recognized that consumer data possesses inherent monetary value within the new information marketplace and publicly stated that:

---

[1]     Rodale does not include the numerous footnotes contained in Plaintiff's Complaint, but denies those footnotes to the extent they contain any allegations that are inconsistent with the cited and referenced materials, and denies any remaining allegations contained in those footnotes.  Rodale also denies all allegations contained in the subheadings throughout the Complaint, and does not include them in its Answer.

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. *Data is currency.  The larger the data set, the greater potential for analysis—and profit.*

**ANSWER:**  Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith. Rodale lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 and therefore denies them on that basis.

23.     In fact, an entire industry exists where companies known as data miners purchase, trade, and collect massive databases of information about consumers.  Data miners then profit by selling this "extraordinarily intrusive" information in an open and largely unregulated market.

**ANSWER:**  Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith. Rodale lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 and therefore denies them on that basis.

24.     The scope of data miners' knowledge about consumers is immense: "If you are an American adult, the odds are that [they] know[] things like your age, race, sex, weight, height, marital status, education level, politics, buying habits, household health worries, vacation dreams—and on and on."

**ANSWER:**  Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith. Rodale lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 and therefore denies them on that basis.

8

25.     Further, "[a]s use of the Internet has grown, the data broker industry has already evolved to take advantage of the increasingly specific pieces of information about consumers that are now available."

**ANSWER:**  Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith. Rodale lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 and therefore denies them on that basis.

26.     Recognizing the serious threat the data mining industry poses to consumers' privacy, on July 25, 2012, the co-Chairmen of the Congressional Bi-Partisan Privacy Caucus sent a letter to nine major data brokerage companies seeking information on how those companies collect, store, and sell their massive collections of consumer data.

**ANSWER:**  Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith. Rodale lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 26 and therefore denies them on that basis.

27.     In their letter, the co-Chairmen recognized that:

> [t]he business of data brokerage, namely the collecting, assembling, maintaining, and selling to third-parties of consumers' personal information, has grown into a multiple billion dollar industry. *By combining data from numerous offline and online sources, data brokers have developed hidden dossiers on every U.S. consumer*. This large[-]scale aggregation of the personal information of hundreds of millions of American citizens raises a number of serious privacy concerns.

**ANSWER:** Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith. Rodale lacks information or belief sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 and therefore denies them on that basis.

28.     Data mining is especially troublesome when consumer information is sold to direct-mail advertisers.  In addition to causing waste and inconvenience, direct-mail advertisers often use consumer information to lure unsuspecting consumers into various scams, including fraudulent sweepstakes, charities, and buying clubs.  Thus, when companies like Rodale share information with data miners and direct-mail advertisers, they contribute to the "[v]ast databases of names and personal information" that are often "sold to thieves by large publicly traded companies," which "put[s] almost anyone within the reach of fraudulent telemarketers" and other criminals.

**ANSWER:** Rodale denies the allegations in Paragraph 28 regarding its actions and the effect of such actions.  Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith.  Rodale lacks information or belief sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 28 and therefore denies them on that basis.

29.     Information disclosures like Rodale's are particularly dangerous to the elderly.  "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide." The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."

**ANSWER:** Rodale denies the allegations in the first sentence of Paragraph 29. Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith. Rodale lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations contained in Paragraph 29 and therefore denies them on that basis.

30.    Indeed, an entire black market exists where the personal information of vulnerable elderly Americans is exchanged. Thus, information disclosures like Rodale's are particularly troublesome because of their cascading nature: "Once marked as receptive to [a specific] type of spam, a consumer is often bombarded with similar fraudulent offers from a host of scam artists."

**ANSWER:** Rodale denies the allegations in Paragraph 30 regarding its actions and the effect of such actions. Rodale refers to the cited document for its actual and complete contents and denies any allegations or characterizations inconsistent therewith. Rodale lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations contained in Paragraph 30 and therefore denies them on that basis.

31.    Rodale is not alone in jeopardizing its subscribers' privacy and well-being in exchange for increased revenue: disclosing subscriber information to data miners, direct marketers, and other third parties is a widespread practice in the publishing industry.

**ANSWER:** Rodale denies the allegation in Paragraph 31.

32.    Thus, as consumer data has become an ever-more valuable commodity, the data mining industry has experienced rapid and massive growth.

Unfortunately for consumers, this growth has come at the expense of their most basic privacy rights.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 32.

33.     As the data mining industry has grown, so too have consumer concerns regarding the privacy of their personal information.

**ANSWER:**  Rodale lacks knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 33 as to the alleged

nature of consumer concerns regarding the data mining industry.  Rodale denies

any remaining allegations contained in Paragraph 33.

34.     A recent survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers polled avoid doing business with companies who they believe do not protect their privacy online. As a result, 81 percent of smartphone users polled said that they avoid using smartphone apps that they don't believe protect their privacy online.

**ANSWER:**  Rodale refers to the cited survey for its actual and complete

contents and denies any allegations or characterizations inconsistent therewith.

Rodale lacks knowledge or information sufficient to form a belief as to the truth of

the allegations contained in Paragraph 34, and therefore denies them on that basis.

35.     Thus, as consumer privacy concerns grow, consumers are increasingly incorporating privacy concerns and values into their purchasing decisions and companies viewed as having weaker privacy protections are forced to offer greater value elsewhere (through better quality and/or lower prices) than their privacy-protective competitors.

**ANSWER:**  Rodale lacks knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 35 as to the alleged

nature of consumer concerns, values, or purchasing decisions. Rodale denies the

remaining allegations contained in Paragraph 35.

36.     In fact, consumers' personal information has become such a valuable
commodity that companies are beginning to offer individuals the opportunity to
sell their personal information themselves.

**ANSWER:**  Rodale refers to the cited document for its actual and complete

contents and denies any allegations or characterizations inconsistent therewith.

Rodale lacks knowledge or information sufficient to form a belief as to the truth of

the allegations contained in Paragraph 36, and therefore denies the allegations on

that basis.

37.     These companies' business models capitalize on a fundamental tenet
underlying the personal information marketplace:  consumers recognize the
economic value of their private data.  Research shows that consumers are willing
to pay a premium to purchase services from companies that adhere to more
stringent policies of protecting their personal data.

**ANSWER:**  Rodale refers to the cited document for its actual and complete

contents and denies any allegations or characterizations inconsistent therewith.

Rodale lacks knowledge or information sufficient to form a belief as to the truth of

the allegations contained in Paragraph 37, and therefore denies the allegations on

that basis.

38.     Thus, in today's economy, individuals and businesses alike place a
real, quantifiable value on consumer data and corresponding privacy rights.  As
such, where a business offers customers a service that includes statutorily
guaranteed privacy protections, yet fails to honor these guarantees, the customer
receives a service of less value than the service paid for.

**ANSWER:**  Rodale lacks knowledge or information sufficient to form a

belief as to the truth of the allegations contained in the first sentence of Paragraph

38.  Rodale denies the allegations contained in Paragraph 38 to the extent it is

intended to apply to this case, and otherwise lacks knowledge or information

sufficient to form a belief as to the truth of those allegations.  Rodale denies the

remaining allegations contained in Paragraph 38.

39.    Rodale maintains a vast digital database comprised of its subscribers'
Personal Reading Information.  Rodale discloses its subscribers' Personal Reading
Information to data mining companies including Acxiom, Ethnic Technologies,
and others, who then supplement that information with additional sensitive
personal information about each Rodale subscriber, including gender, age,
ethnicity, income, net worth, religion, charitable donations, health conditions, and
even whether the subscriber has children living at home.  (*See, e.g*., Exhibits B and
C.)

**ANSWER:**  Rodale admits that it maintains a database containing certain

information about certain of its subscribers.  Rodale admits it uses Acxiom and

others as agents to assist it with certain of its business operations, including

providing information to Rodale, but denies the characterization of these agents'

businesses and services, and denies that Rodale discloses any information in

violation of the VRPA.  Rodale denies the remaining allegations contained in

Paragraph 39.

40.    Rodale then sells its mailing lists—which include subscribers'
Personal Reading Information identifying which individuals purchased which
magazines, and can include the sensitive information obtained from data miners—
to data miners, other consumer-facing businesses, non-profit organizations seeking

to raise awareness and solicit donations, and to political organizations soliciting donations, votes, and volunteer efforts.  (*See* Exhibits B – E.)

**ANSWER:**  Rodale denies the allegations contained in Paragraph 40.

41.    As a result of Rodale's data compiling and sharing practices, companies can purchase mailing lists from Rodale that identify Rodale subscribers by their most intimate details:  income, political affiliation, religious practice, charitable donations, and even medical conditions.  Rodale's disclosure of such sensitive and personal information puts consumers, especially the more vulnerable members of society, at risk of serious harm from scammers.  For example, Rodale will sell—to anyone willing to pay for it—a list with the names and addresses of all single, *Prevention* subscribers over age 80, who own homes, suffer from arthritis, and donate to international aid groups.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 41.

42.    Rodale discloses this information without subscriber consent, and its subscribers remain unaware that their Personal Reading Information and other sensitive personal information is being bought and sold on the open market.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 42.

43.    Consumers can sign up for Rodale subscriptions through numerous media outlets, including the Internet, telephone, or traditional mail.  Regardless of how the consumer subscribes, Rodale never requires the individual to read or agree to any terms of service, privacy policy, or information-sharing policy.  Consequently, Rodale uniformly fails to obtain any form of consent from—or even provide effective notice to—its subscribers before disclosing their Personal Reading Information.

**ANSWER:**  Rodale admits that there are various outlets through which an

individual may subscribe to a Rodale publication.  Rodale denies the remaining

allegations contained in Paragraph 43.

44.    As a result, Rodale disclosed and continues to disclose its customers' Personal Reading Information—including their reading habits and preferences that can "reveal intimate facts about our lives, from our political and religious beliefs to our health concerns"—to anybody willing to pay for it, without consent and in

direct violation of the VRPA and in breach of its contracts with Plaintiff and the other Class members.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 44.

## FACTS RELATING TO PLAINTIFF ROSE COULTER-OWENS

45.    Plaintiff Rose Coulter-Owens is a citizen of the State of Michigan.

**ANSWER:**  Rodale admits that it has records indicating that a person using the name Rose Coulter-Owens with a Michigan address subscribed to a Rodale magazine.  However, Rodale lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45, and therefore denies them on that basis.

46.    Coulter-Owens currently subscribes to *Prevention*.

**ANSWER:**  Rodale admits that its records list a person with that name as a current subscriber to *Prevention*.

47.    *Prevention* is a magazine published, owned, and operated by Rodale.

**ANSWER:**  Rodale admits the allegations contained in Paragraph 47.

48.    Coulter-Owens has never agreed to allow Rodale to sell or disclose her Personal Reading Information to anyone.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 48.

49.    Coulter-Owens did not receive notice before Rodale sold and disclosed her Personal Reading Information.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 49.

50.    However, beginning on the date that Coulter-Owens subscribed to *Prevention*, and continuing to the present, Rodale has disclosed, and continues to disclose, without consent or prior notice, Coulter-Owens's Personal Reading

Information (*i.e.*, information that identifies Coulter-Owens as a *Prevention* subscriber) to data mining companies including Acxiom, Ethnic Technologies, and others, who then supplement that information with data from their own files.

**ANSWER:**  Rodale admits that it uses Acxiom and others as agents to assist

it with certain of its business operations, such as providing information to Rodale

about its subscribers, including Rose Coulter-Owens.  Rodale denies the

characterizations of its practices and those of its agents, and denies the remaining

allegations in Paragraph 50.

51.    Furthermore, during that same time period, Rodale has sold—and continues to sell and offer for sale—mailing lists containing Coulter-Owens's Personal Reading Information to third parties including direct-mail advertisers as well as organizations soliciting monetary contributions, volunteer work, and votes, without first obtaining Coulter-Owens's written consent or even giving her prior notice of the sales.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 51.

52.    Because Rodale sold and disclosed her Personal Reading Information, she now receives a deluge of junk mail and telephone solicitations.  These unwanted offers waste her time, money, and resources, and cause her emotional distress, including irritation, annoyance, and anxiety and fear that her personal information will fall into the hands of thieves and scammers.  This increase in harassing junk mail and phone calls received by Coulter-Owens is attributable, in part, to Rodale's sale of her Personal Reading Information.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 52.

53.    Additionally, because Coulter-Owens is entitled by law to privacy in her Personal Reading Information, and because she paid money for her *Prevention* subscription, Rodale's sale of her Personal Reading Information deprived her of the full set of benefits to which she was entitled as part of her *Prevention* subscription, thereby causing her economic harm.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 53.

54.    Accordingly, what Coulter-Owens received (a subscription without privacy protections) was less valuable than what she paid for (a subscription with accompanying privacy protections), and she would not have been willing to pay as much, if at all, for her *Prevention* subscription had she known that Rodale would disclose her Personal Reading Information.

**ANSWER:** Rodale denies the allegations contained in Paragraph 54.

## CLASS ALLEGATIONS

55.    **Class Definition**:  Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of herself and a proposed Class, defined as follows:

> All Michigan residents who had their Personal Reading Information disclosed to third parties by Rodale without consent.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendant, and (5) the legal representatives, successors, or assigns of any such excluded person.

**ANSWER:**  Rodale admits that Plaintiff purports to bring this action as a class action on behalf of the alleged putative class, but Rodale denies that a class is properly certifiable in this case.  Rodale denies the remaining allegations contained in Paragraph 55.

56.    **Numerosity**:  The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder of each class member is impracticable.  Defendant has deceived, and profited from selling the Personal Reading Information of, thousands of consumers who fall into the definition set

forth above.  Ultimately, members of the Class will be easily identified through Defendant's records.

**ANSWER:**  Rodale lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 56 relating to the knowledge of Plaintiff and therefore denies those allegations.  Rodale denies the remaining allegations contained in Paragraph 56.

57.  **Commonality and Predominance**:  Common questions of law and fact exist as to all members of the Class, and they predominate over any questions affecting only individual members.  Those questions with respect to the Class include, but are not limited to:

> (a)  Whether Rodale is "engaged in the business of selling at retail" books or other written materials (*i.e.*, magazines);
>
> (b)  Whether Rodale obtained consent from Plaintiff and the Class before disclosing their Personal Reading Information to third parties;
>
> (c)  Whether Rodale's disclosure of Plaintiff's and the Class's Personal Reading Information violated the VRPA;
>
> (d)  Whether Rodale's disclosure of Plaintiff's and the Class's Personal Reading Information constitutes a breach of contract; and
>
> (e)  Whether Rodale's sale and disclosure of Plaintiff's and the Class's Personal Reading Information constitutes unjust enrichment.

**ANSWER:**  Rodale denies the allegations in Paragraph 57.

58.  **Typicality**:  Plaintiff's claims are typical of the claims of the other Class members.  Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct based upon Defendant's disclosure of Plaintiff's and the Class's Personal Reading Information.

**ANSWER:**  Rodale denies the allegations in Paragraph 58.

59.     **Adequate Representation**:  Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions.  Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class members, and have the financial resources to do so.  Neither Plaintiff nor her counsel has any interest adverse to those of the other Class members.

**ANSWER:**  Rodale denies the allegations in  Paragraph 59.

60.     **Policies Generally Applicable to the Class**:  This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole.  Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge to those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

**ANSWER:**  Rodale denies the allegations in  Paragraph 60.

61.     **Superiority**:  Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all Class members is impracticable.  The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.  Thus, it would be virtually impossible for the Class members to obtain effective relief from Defendant's misconduct on an individual basis.  Even if Class members could sustain individual litigation, it would not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**ANSWER:**  Rodale denies the allegations in  Paragraph 61.

62.     Plaintiff reserves the right to revise the definition of the Class as necessary based upon information learned in discovery.

**ANSWER:**  Rodale admits that Plaintiff seeks to reserve the right to revise the definition of the Class, but denies that Plaintiff necessarily has that right and Rodale reserves the right to object to any such attempt to amend.  Rodale denies any remaining allegations contained in Paragraph 62.

### FIRST CAUSE OF ACTION
### Violation of the Video Rental Privacy Act
### (M.C.L. § 445.1712)
### (On Behalf of Plaintiff and the Class)

63.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:**  Rodale incorporates its responses to Paragraphs 1-62 as if fully set forth herein.

64.     Rodale sells magazine subscriptions, print and digital copies of individual magazine issues, as well as books and videos, directly to consumers. Therefore, Rodale is engaged in the business of selling books or other written materials, and videos, at retail.  *See* M.C.L. § 445.1712.

**ANSWER:**  Rodale admits that it sells magazine subscriptions, print and digital copies of individual magazine issues, books, and videos.  The remainder of the allegations contained in Paragraph 64 state legal conclusions to which no response is required.  To the extent that any response is required, Rodale denies these allegations.  Rodale refers to the VRPA for its complete contents and denies any allegations or characterizations contained in Paragraph 64 that are inconsistent therewith, and denies the remaining allegations contained in Paragraph 64.

65.     By subscribing to *Prevention*, Plaintiff purchased written materials directly from Rodale.  *See* M.C.L. § 445.1712.

**ANSWER:**  Rodale admits that Coulter-Owens subscribed to *Prevention*. The remaining allegations contained in Paragraph 65 state legal conclusions to which no response is required.  To the extent that any response is required, Rodale denies these allegations.  Rodale denies any remaining allegations in Paragraph 65.

66.     Because Plaintiff purchased written materials directly from Rodale, she is a "customer" within the meaning of the VRPA.  *See* M.C.L. § 445.1711(a).

**ANSWER:**  The allegations contained in Paragraph 66 state legal conclusions to which no response is required.  To the extent that any response is required, Rodale denies these allegations.

67.     At all times relevant, and beginning on the dates Plaintiff initiated her *Prevention* subscription, Rodale disclosed Plaintiff's Personal Reading Information, which identified her as a *Prevention* subscriber, in at least two ways.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 67.

68.     First, Rodale disclosed mailing lists containing Plaintiff's Personal Reading Information to data mining companies such as Acxiom, Ethnic Technologies, and others, who then supplemented the mailing lists with additional sensitive information from their own databases, before sending the mailing lists back to Rodale.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 68.

69.     Second, Rodale sold its mailing lists containing Plaintiff's Personal Reading Information—enhanced with additional information from data miners—to third parties, including other consumer-facing companies, direct-mail advertisers, and organizations soliciting monetary contributions, volunteer work, and votes.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 69.

22

70.     Because the mailing lists included the additional information from the data miners, the lists were more valuable, and Rodale was able to increase its profits gained from the mailing list sales.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 70.

71.     By selling or otherwise disclosing its subscriber lists, Rodale disclosed to persons other than Plaintiff records or information concerning her purchase of written materials from Rodale.  *See* M.C.L. § 445.1712.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 71.

72.     The information Rodale disclosed indicates Plaintiff's name and address, as well as the fact that she subscribed to *Prevention*.  Accordingly, the records or information disclosed by Rodale indicate Plaintiff's identity.  *See* M.C.L. § 445.1712.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 72.

73.     Plaintiff never consented to Rodale disclosing their Personal Reading Information to anyone.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 73.

74.     Worse yet, Plaintiff did not receive notice before Rodale's disclosed their Personal Reading Information to third parties.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 74.

75.     On information and belief, Rodale's disclosures of Plaintiff's Personal Reading Information were not made pursuant to a court order, search warrant, or grand jury subpoena.

**ANSWER:**  Rodale admits that the allegations in this Complaint do not

pertain to disclosures pursuant to a court order, search warrant, or grand jury

subpoena.  Rodale denies that it has disclosed information in violation of the

VRPA, and denies any remaining allegations contained in Paragraph 75.

76.     Rodale's disclosures of Plaintiff's Personal Reading Information were not made to collect payment for their subscriptions.

**ANSWER:**  Rodale admits that the allegations in this Complaint do not

pertain to disclosures made to collect payment for subscriptions.  Rodale denies

that it has disclosed information in violation of the VRPA, and denies any

remaining allegations contained in Paragraph 76.

77.     Rodale's disclosures of Plaintiff's Personal Reading Information were made to data miners, direct-mail advertisers, and organizations soliciting monetary contributions, volunteer work, and votes—all in order to increase Rodale's revenue.  Accordingly, Rodale's disclosures were not made for the exclusive purpose of marketing goods and services directly to Plaintiff.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 77.

78.     By disclosing Plaintiff's Personal Reading Information, Rodale violated Plaintiff's common law right to privacy.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 78.

79.     By disclosing Plaintiff's Personal Reading Information, Rodale violated Plaintiff's statutorily-protected right to privacy in their reading habits.  *See* M.C.L. § 445.1712.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 79.

80.     Additionally, because Plaintiff and the Class paid for their Rodale subscriptions, and Rodale was obligated to comply with the VRPA, Rodale's unlawful disclosure of Plaintiff's and the other Class members' Personal Reading Information deprived Plaintiff and the Class members of the full value of their paid-for subscriptions.  Because Plaintiff and the other Class members ascribe monetary value to the privacy of their Personal Reading Information, Rodale's unlawful sale and disclosure of their Personal Reading Information caused her to receive less value than she paid for, thereby causing her economic harm.

**ANSWER:**  Rodale lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the subjective and individualized view of Plaintiff or the putative class members.  Rodale denies the remaining allegations contained in Paragraph 80.

81.    Likewise, because Plaintiff and the other Class members ascribe monetary value to the privacy of their Personal Reading Information, a magazine subscription that keeps their Personal Reading Information private is more valuable than one that does not.

**ANSWER:**  Rodale lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding what monetary value, if any, Plaintiff or the putative class members ascribe to their privacy, or their views as to the value of any particular magazine subscription.  Rodale denies the remaining allegations contained in Paragraph 81.

82.    Accordingly, had Plaintiff been adequately informed of Rodale's disclosure practices, she would not have been willing to purchase her *Prevention* subscription at the price charged, if at all.  Thus, Rodale's unlawful disclosures caused Plaintiff economic harm.

**ANSWER:**  Rodale lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 82.  Rodale denies it disclosed Plaintiff's information in violation of the VRPA, and denies the remaining allegations contained in Paragraph 82.

83.    Rodale's disclosure of Plaintiff's Personal Reading Information to third parties has also caused an influx of third party print advertisements and marketing calls to her cellular phone, causing emotional distress in the form of irritation, aggravation, anxiety, and fear that her information will be obtained and

misused by thieves and scammers, as well as damages in the form of decreased available cellular phone minutes.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 83.

84.    As a result of Rodale's unlawful and continued disclosure of their Personal Reading Information, Plaintiff and the other Class members have suffered privacy and economic injuries.  On behalf of herself and the Class, Plaintiff seeks: (1) an injunction requiring Defendant Rodale to obtain consent from Michigan subscribers prior to the disclosure of their Personal Reading Information as required by the VRPA; (2) actual damages, including disgorgement, or $5,000.00, whichever is greater, per Class member pursuant to M.C.L. § 445.1715(a); and (3) costs and reasonable attorneys' fees pursuant to M.C.L. § 445.1715(b).

**ANSWER:**  Rodale admits that Plaintiff seeks the relief enumerated in

Paragraph 84, but denies that Plaintiff or any putative class member is entitled to

any of the relief requested and denies all remaining allegations contained in

Paragraph 84.

## SECOND CAUSE OF ACTION
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

85.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:**  Rodale incorporates its responses to Paragraphs 1-84 as if fully

set forth herein.

86.    Rodale offered to sell magazine subscriptions to Coulter-Owens and the other Class members for specific prices.

**ANSWER:**  No response is required to the allegations in Paragraph 86

because the Court dismissed the contract claim in this action, and they are

therefore denied on that basis.

26

87.    Coulter-Owens and the other Class members accepted Rodale's offers by agreeing to pay the offered prices as consideration for purchasing the magazine subscriptions.

**ANSWER:**  No response is required to the allegations in Paragraph 87

because the Court dismissed the contract claim in this action, and they are

therefore denied on that basis.

88.    Accordingly, Rodale, on the one hand, and Coulter-Owens and the other Class members on the other, entered into binding contracts for magazine subscriptions.

**ANSWER:**  No response is required to the allegations in Paragraph 88

because the Court dismissed the contract claim in this action, and they are

therefore denied on that basis.

89.    Because the laws existing at the time and place of the making of a contract are incorporated into it, the contracts between Rodale and Coulter-Owens and the other Class members included obligations for the parties to abide by all applicable laws, including the VRPA.

**ANSWER:**  No response is required to the allegations in Paragraph 89

because the Court dismissed the contract claim in this action, and they are

therefore denied on that basis.

90.    Coulter-Owens and the other Class members performed their obligations under the contracts by paying the consideration owed to Rodale for the purchase of their magazine subscriptions, and by complying with all applicable laws.

**ANSWER:**  No response is required to the allegations in Paragraph 90

because the Court dismissed the contract claim in this action, and they are

therefore denied on that basis.

91.     The ability to control disclosure of sensitive personal information (such as Personal Reading Information) is material to any consumer transaction because it is likely to affect a consumer's decision to, or conduct regarding, purchase of a product or service.

**ANSWER:**  No response is required to the allegations in Paragraph 91

because the Court dismissed the contract claim in this action, and they are

therefore denied on that basis.

92.     Rodale's failure to perform its contractual obligations imposed by the VRPA—*i.e.*, maintaining confidentiality of subscribers' Personal Reading Information—constitutes a material breach by Rodale of its contracts with Coulter-Owens and the other Class members.

**ANSWER:**  No response is required to the allegations in Paragraph 92

because the Court dismissed the contract claim in this action, and they are

therefore denied on that basis.

93.     Plaintiff and the other Class members have suffered actual damages as a result of Rodale's breach in the form of the value Coulter-Owens and the other Class members paid for and ascribed to the confidentiality of their Personal Reading Information.  This amount is tangible and will be calculated at trial.

**ANSWER:**  No response is required to the allegations in Paragraph 93

because the Court dismissed the contract claim in this action, and they are

therefore denied on that basis.

94.     Further, a portion of the purchase price of each Rodale subscription sold to Plaintiff and the other Class members was intended to ensure the confidentiality of Plaintiff's and the other Class members' Personal Reading Information, as required by the VRPA.  Because Plaintiff and the other Class members were denied services that they paid for and were entitled to receive—*i.e.*, confidentiality of their Personal Reading Information—they incurred actual monetary damages.

**ANSWER:** No response is required to the allegations in Paragraph 94

because the Court dismissed the contract claim in this action, and they are

therefore denied on that basis.

95.     Additionally, because Rodale profited from its breach, Plaintiff and
the other Class members are entitled to disgorgement of all profits obtained by
Rodale from its unlawful disclosure of its subscribers' Personal Reading
Information.

**ANSWER:** No response is required to the allegations in Paragraph 95

because the Court dismissed the contract claim in this action, and they are

therefore denied on that basis.

96.     Accordingly, Plaintiff and the other Class members seek an order
declaring that Rodale's conduct constitutes breach of contract, and awarding
Plaintiff and the Class disgorgement of Rodale's unlawfully obtained profits, and
damages in an amount to be calculated at trial.

**ANSWER:** No response is required to the allegations in Paragraph 96

because the Court dismissed the contract claim in this action, and they are

therefore denied on that basis.

### THIRD CAUSE OF ACTION
#### Unjust Enrichment
#### (In the Alternative to Breach of Contract)
#### (On Behalf of Plaintiff and the Class)

97.     Plaintiff incorporates the allegations contained in Paragraphs 1
through 84 as if fully set forth herein.

**ANSWER:** Rodale incorporates its response to Paragraphs 1-96 as if fully

set forth herein.

29

98.     Plaintiff's claim for unjust enrichment is brought in the alternative to her claim for breach of contract.

**ANSWER:**  Rodale admits that Plaintiff purports to bring this claim in the

alternative, but denies that she has properly asserted such a claim and states the

claim is without merit.  Rodale denies any remaining allegations contained in

Paragraph 98.

99.     Plaintiff and the Class members conferred benefits on Rodale by providing Rodale with their Personal Reading Information and paying Rodale for their magazine subscriptions.  Rodale received and retained the information and money belonging to Plaintiff and the Class when Plaintiff and the Class subscribed to Rodale publications.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 99.

100.    Because Rodale received and processed Plaintiff's and the Class's subscription payments and Personal Reading Information, and because Rodale has employees handling customer accounts and billing as well as customer data, Rodale appreciates or has knowledge of such benefits.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 100.

101.    Under the VRPA, Plaintiff and the Class members were entitled to confidentiality in their Personal Reading Information as part of their subscriptions.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 101.

102.    Under principles of equity and good conscience, because Rodale failed to comply with the VRPA, Rodale should not be allowed to retain the full amount of money Plaintiff and the Class paid for their subscriptions or the money it received by selling Plaintiff's and the Class's Personal Reading Information.

**ANSWER:**  Rodale denies the allegations contained in Paragraph 102.

103.    Plaintiff and the other Class members have suffered actual damages as a result of Rodale's unlawful conduct in the form of the value Plaintiff and the

other Class members paid for and ascribed to the confidentiality of their Personal Reading Information. This amount is tangible and will be calculated at trial.

**ANSWER:** Rodale denies the allegations contained in Paragraph 103.

104. Additionally, Plaintiff and the Class members have suffered actual damages inasmuch as Rodale's failure to inform them that it would disclose their Personal Reading Information caused them to purchase magazine subscriptions when they otherwise would not have.

**ANSWER:** Rodale denies the allegations contained in Paragraph 104.

105. Further, a portion of the purchase price of each Rodale magazine subscription sold to Plaintiff and the other Class members was intended to ensure the confidentiality of Plaintiff's and the other Class members' Personal Reading Information, as required by the VRPA. Because Plaintiff and the other Class members were denied services that they paid for and were entitled to receive—*i.e.*, confidentiality of their Personal Reading Information—and because Plaintiff and the Class would have commanded a discount to voluntarily forego those benefits, they incurred actual monetary damages.

**ANSWER:** Rodale denies the allegations contained in Paragraph 105.

106. To prevent inequity, Rodale should return to Plaintiff and the Class the value they ascribe to confidentiality of their Personal Reading Information and all money derived from Rodale's sale and disclosure of Plaintiff's and the Class's Personal Reading Information.

**ANSWER:** Rodale denies the allegations contained in Paragraph 106.

107. Accordingly, Plaintiff and the Class members seek an order declaring that Rodale's conduct constitutes unjust enrichment, and awarding Plaintiff and the Class restitution in an amount to be calculated at trial equal to the amount of money obtained by Rodale through its sale and disclosure of Plaintiff's and the Class's Personal Reading Information.

**ANSWER:** Rodale admits that Plaintiff purports to seek the alleged order,

but denies that Plaintiff or the putative Class is entitled to any such order, and

denies any remaining allegations contained in Paragraph 107. Rodale denies that

31

Plaintiff or the putative class is entitled to any relief from Rodale, including the relief contained in the Prayer for Relief, and denies any remaining allegations contained in the Prayer for Relief.

## ADDITIONAL DEFENSES

Rodale asserts the following additional defenses to Plaintiff's Complaint:

## FIRST ADDITIONAL DEFENSE

Plaintiff's information was not disclosed in violation of the VRPA.

## SECOND ADDITIONAL DEFENSE

Any alleged disclosure by Rodale of the magazine subscription information of its customers was to an "agent" and therefore permissible under the VRPA.

## THIRD ADDITIONAL DEFENSE

The VRPA is inapplicable to the disclosures alleged because Rodale's magazine subscriptions are not sold "at retail," nor did Plaintiff or certain members of the putative class purchase their subscriptions "at retail," pursuant to MCL 445.1712.

## FOURTH ADDITIONAL DEFENSE

The VRPA does not apply to Rodale's magazine business, as a magazine subscription is not "written material" within the meaning of the VRPA.

## FIFTH ADDITIONAL DEFENSE

Any alleged disclosure by Rodale of magazine subscription information was for the exclusive purpose of marketing goods and services directly to the consumer and therefore permissible under the VRPA.

## SIXTH ADDITIONAL DEFENSE

Plaintiff and the putative class were informed by written notice that they may remove his or her name at any time, pursuant to MCL § 445.1713(d).

## SEVENTH ADDITIONAL DEFENSE

Both on its face and as sought to be applied by Plaintiff, the statutory damages scheme set forth in the VRPA is unconstitutionally excessive, and barred by the Fifth and/or Eighth Amendments to the United States Constitution and Article I, Sections 16 and 17 of the Michigan Constitution, and violates substantive and procedural due process.

## EIGHTH ADDITIONAL DEFENSE

Both on its face and as sought to be applied by Plaintiff, the VRPA is unconstitutional under the First Amendment to the United States Constitution and Article I, Section 5 of the Michigan Constitution.

## NINTH ADDITIONAL DEFENSE

Both on its face and as sought to be applied by Plaintiff, the VRPA violates the Takings Clause of the United States Constitution.

## TENTH ADDITIONAL DEFENSE

Both on its face and as sought to be applied by Plaintiff, the VRPA is unconstitutional under the United States Constitution and the Michigan Constitution for numerous additional reasons, including but not limited to the fact the VRPA is impermissibly vague and ambiguous.

## ELEVENTH ADDITIONAL DEFENSE

Plaintiff and the putative class members have incurred no cognizable damage and have not suffered any injury in fact and therefore lack standing, and their claims also fail because they have not suffered any "harm" or "actual damages."

## TWELFTH ADDITIONAL DEFENSE

Plaintiff and the putative class members have failed to mitigate any alleged damages.

## THIRTEENTH ADDITIONAL DEFENSE

Plaintiff's and the putative class members' claims are barred in whole or in part by the doctrines of consent, waiver, estoppel, laches, unclean hands, and/or other equitable doctrines.

## FOURTEENTH ADDITIONAL DEFENSE

Plaintiff's and the putative class members' claims are barred, in whole or in part, by the applicable statute of limitations and/or statute of repose.

## FIFTEENTH ADDITIONAL DEFENSE

Plaintiff's and the putative class members' claims for unjust enrichment fail as a matter of law because each of them received the benefit of the bargain.

## SIXTEENTH ADDITIONAL DEFENSE

The Complaint contains insufficient information to permit Rodale to raise all appropriate defenses and, therefore, Rodale reserves its right to amend and/or supplement this answer and these defenses and to assert additional defenses.

**WHEREFORE,** Rodale Inc. respectfully requests that this Court enter judgment in its favor and against Plaintiff Rose Coulter-Owens on her Complaint, award Rodale its costs, and enter such other relief this Court deems necessary and proper.

Dated:  February 25, 2015

Respectfully submitted,

/s/ Natalie J. Spears
One of the Attorneys for Defendant
Rodale Inc.

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
151 South Old Woodward Ave.
Suite 200
Birmingham, MI 48009
pkupelian@clarkhill.com
cschley@clarkhill.com

Natalie J. Spears
Anthony T. Eliseuson
Kristen C. Rodriguez
DENTONS US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
(312) 876-8000
(312) 876-7934 (fax)
natalie.spears@dentons.com
anthony.eliseuson@dentons.com
kristen.rodriguez@dentons.com

# CERTIFICATE OF SERVICE

Natalie J. Spears, an attorney, hereby certify that on February 25, 2015, a copy of the foregoing was served via the CM/ECF filing system, which send notification to the attorneys of record.

/s/ Natalie J. Spears

83825344\V-9

37