# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| ROSE COULTER-OWENS, individually, and on behalf of all others similarly situated, | Case No. 2:14-cv-12688 |
| Plaintiff, | Honorable Robert H. Cleland |
| v. | |
| RODALE INC., a Pennsylvania Corporation, | |
| Defendant. | |

## PLAINTIFF'S *UNOPPOSED* MOTION FOR AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**Respectfully submitted by:**

Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: 248.596.1111

*Proposed Class Counsel*

## STATEMENT OF ISSUES PRESENTED

1.     Does the proposed Settlement Class meet Rule 23's requirements for class certification for settlement purposes?

**Plaintiff's Answer: Yes.**

2.     Should Plaintiff's Counsel be appointed as Class Counsel?

**Plaintiff's Answer: Yes.**

3.     Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed settlement class?

**Plaintiff's Answer: Yes.**

4.     Does the Notice Plan satisfy the requirements of Rule 23 and Due Process?

**Plaintiff's Answer: Yes.**

## CONTROLLING AND MOST APPROPRITE AUTHORITIES

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184 (2013)

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007)

*Coulter-Owens v. Time Inc.*, 2015 WL 4527822 (E.D. Mich. July 27, 2015)

*Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D. Mich. 2001)

*Halaburda v. Bauer Publishing Co, LP*, 2:12-cv-12831, Dkt. 68 (E.D. Mich. January 6, 2015)

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001)

*In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D. Mich. 2013)

*Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528 (E.D. Mich. 2013)

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013)

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................ 1

II. BACKGROUND ............................................................................... 4

    A.  Michigan's Video Rental Privacy Act .................................... 4

    B.  Plaintiff's Allegations ........................................................... 4

    C.  The Litigation History and Settlement Discussions ............................ 6

III. TERMS OF THE SETTLEMENT ..................................................... 7

    A.  Class Definition ..................................................................... 7

    B.  Monetary Relief .................................................................... 8

    C.  Prospective Relief ................................................................. 8

    D.  Release ................................................................................... 9

    E.  Notice and Administration Expenses ..................................... 9

    F.  Incentive Award .................................................................... 9

    G.  Attorneys' Fees and Expenses ............................................... 9

IV. THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION
    FOR SETTLEMENT PURPOSES .................................................. 10

    A.  The Numerosity Requirement is Satisfied ......................... 11

    B.  The Commonality Requirement is Satisfied ...................... 12

    C.  The Typicality Requirement is Satisfied ............................ 14

    D.  The Adequacy Requirement is Satisfied ............................ 15

    E.  The Proposed Settlement Class Meets the Requirements of Rule
    23(b)(3) ................................................................................ 18

        1.  *Common Questions of Law and Fact Predominate* ................ 19

        2.  *A Class Action is a Superior Method for Adjudicating*

*this Action* ............................................................................. 20

V.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS
       COUNSEL ............................................................................ 22

VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
       APPROVAL .......................................................................... 23

VII.   THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND
       SUBSTANCE ........................................................................ 29

VIII.  CONCLUSION ...................................................................... 31

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ........................................................................ 10, 18, 21

*Amgen Inc. v. Conn. Retirement Plans and Trust Funds,*
    133 S. Ct. 1184 (2013) ........................................................................ 10, 20

*BMW of N. Am., Inc. v. Gore,*
    517 U.S. 559 (1996) ........................................................................ 27

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,*
    523 U.S. 424 (2001) ........................................................................ 27

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ........................................................................ 29

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ........................................................................ 12, 13, 18

**United States Circuit Court of Appeals Cases**

*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir. 2007) ........................................................................ 16

*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996) ........................................................................ 11, 14

*In re Whirlpool Corp. Front-Loading Washing Products Liability Litig.,*
    722 F.3d 838 (6th Cir. 2013) ........................................................................ 10, 12, 20

*Lane v. Facebook, Inc.,*
    696 F.3d 811 (9th Cir. 2012) ........................................................................ 3, 27

*Parker v. Time Warner Entm't Co.,*
    331 F.3d 13 (2d Cir. 2003) ........................................................................ 26

*Powers v. Hamilton County Public Defender Com'n,*
    501 F.3d 592 (6th Cir. 2007) ........................................................................ 18, 19, 21

*UAW v. Gen. Motors Corp.,*

497 F.3d 615 (6th Cir. 2007) ............................................................................

*Senter v. Gen. Motors Corp.*,
532 F.2d 511 (6th Cir. 1976) ........................................................ 16

*Vassalle v. Midland Funding LLC*,
708 F.3d 747 (6th Cir. 2013) ........................................................ 16

*Young v. Nationwide Mut. Ins. Co.*,
693 F.3d 532 (6th Cir. 2010) .................................................... 21, 22

**United States District Court Cases**

*Calloway v. Caraco Pharm. Labs., Ltd.*,
287 F.R.D. 402 (E.D. Mich. 2012) ............................................... 22

*Coulter-Owens v. Time Inc.*,
2015 WL 4527822 (E.D. Mich. July 27, 2015).................................... *passim*

*Curry v. SBC Comm'ns, Inc.*,
250 F.R.D 301 (E.D. Mich. 2008) ................................................ 11

*Date v. Sony Electronics, Inc.*,
2013 WL 3945981 (E.D. Mich. July 31, 2013)........................................ 15

*Davis v. Bank of Am.*,
No. 05-cv-80806, Dkt. 46 (S.D. Fla. June 21, 2006).............................. 3, 29

*Fraley v. Facebook, Inc.*,
966 F. Supp. 2d 939 (N.D. Cal. 2013)................................................ 3, 27

*Gilkey v. Central Clearing Co.*,
202 F.R.D. 515 (E.D. Mich. 2001) ............................................... 14

*Halaburda v. Bauer Publ'g Co.*,
No. 12-cv-12831, Dkt. 63 (E.D. Mich. Sept. 26, 2014) ........................ 11, 18

*Halaburda v. Bauer Publishing Co, LP*,
No. 12-cv-12831, Dkt. 68 (E.D. Mich. January 6, 2015)........................ 2, 27

*Harris v. comScore, Inc.*,
292 F.R.D. 579 (N.D. Ill. 2013) ................................................... 17

*In re Cardizem CD Antitrust Litig.*,

200 F.R.D. 326 (E.D. Mich. 2001) .......................................................... 19, 21

*In re Facebook Privacy Litig.,*
10-cv-02389, Dkt. 69 (N.D. Cal. 2010)......................................................... 17

*In re Google Buzz Privacy Litig.,*
2011 WL 7460099 (N.D. Cal. June 2, 2011)............................................. 3, 27

*In re Netflix Privacy Litig.,*
No. 11-cv-00379, Dkt. 59 (N.D. Cal. Aug. 12, 2011).................................. 16

*In re Netflix Privacy Litig.,*
2013 WL 1120801 (N.D. Cal. March 18, 2013) ....................................... 3, 27

*In re Packaged Ice Antitrust Litig.,*
2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)....................................... 23, 24

*Int'l Union v. Ford Motor Co.,*
2006 WL 1984363, (E.D. Mich. July 13, 2006).................................... 16, 24

*IUE-CWA v. Gen. Motors Corp.,*
238 F.R.D. 583 (E.D. Mich. 2006) ............................................................. 25

*Landwehr v. AOL,*
No. 11-cv-1014, Dkt. 133 (E.D. Va. May 24, 2013)............................... 3, 29

*Leonhardt v. ArvinMeritor, Inc.,*
581 F. Supp. 2d 818 (E.D. Mich. 2008) ...................................................... 27

*Little Caesar Enters., Inc. v. Smith,*
172 F.R.D. 236 (E.D. Mich. 1997)............................................................. 15

*Machesney v. Lar-Bev of Howell, Inc.,*
292 F.R.D. 412 (E.D. Mich. 2013).............................................................. 18

*McDonald v. Asset Acceptance LLC,*
296 F.R.D. 513 (E.D. Mich. 2013).............................................................. 11

*Merenda v. VHS of Mich., Inc.,*
296 F.R.D. 528 (E.D. Mich. 2013)....................................................... 12, 18

*Olden v. LaFarge Corp.,*
472 F. Supp. 2d 922 (E.D. Mich. 2007) ...................................................... 27

*Reese v. CNH America, LLC,*
    227 F.R.D. 483 (E.D. Mich. 2005) ................................................................. 14

*Sheick v. Auto. Component Carrier, LLC*,
    2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ...................................... 24, 25

*Supnick v. Amazon.com, Inc*.,
    2000 WL 1603820 (W.D. Wash. May 18, 2000) ........................................ 13

*UAW v. Gen. Motors Corp.*,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ...................................... 24, 26

**Statutes and Rules**

28 U.S.C. § 1715 ...........................................................................................

Fed. R. Civ. P. 23 ................................................................................... *passim*

M.C.L. § 445.1712 .................................................................................... 4, 13

M.C.L. § 445.1715 .......................................................................................... 4

**Miscellaneous**

Conte & Newberg, 4 *Newberg on Class Actions*, (4th Ed. 2002) ................... 23, 30

Daniel R. LeCours, Note, *Steering Clear of the "Road to Nowhere": Why the
    BMW Guideposts Should Not be Used to Review Statutory Penalty Awards,*
    63 Rutgers L. Rev. 327 (2010) ....................................................................... 26

*Kinder v. Meredith Corporation,*
    1:14-cv-11284, Dkt. 72 (E.D. Mich. Oct. 5, 2015) ........................................ 2

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) ........................................ 24

## I.   INTRODUCTION

Plaintiff Rose Coulter-Owens ("Plaintiff") respectfully requests that the Court grant preliminary approval of the Parties' proposed Class Action Settlement Agreement (the "Settlement").[1] If approved, the Settlement will resolve the claim that Defendant Rodale Inc. ("Rodale") violated the Michigan Preservation of Personal Privacy Act—which is popularly referred to as the Video Rental Privacy Act ("VRPA")—by allegedly disclosing its customers' magazine subscription histories to third party companies without consent. As discussed herein, the Settlement—which was reached with the assistance of the former Chief Judge of the Northern District of Illinois, the Honorable James F. Holderman (ret.), and only after completing full class and merits discovery—is an excellent result for the proposed Settlement Class.[2]

Under the terms of the Settlement, Defendant has agreed to establish a $4.5 million non-reversionary Settlement Fund, which will be used to pay all approved claims by class members, notice and administration expenses, an incentive award to Plaintiff Coulter-Owens, and attorneys' fees to proposed Class Counsel as awarded by the Court. In terms of the monetary relief to class members, those who submit a short and simple one-page claim form will receive a *pro rata* cash award,

---

[1]  The proposed Settlement Agreement is attached hereto as Exhibit 1.

[2]  Except as otherwise indicated, all defined terms used herein shall have the same meanings ascribed to them in the Parties' proposed Settlement Agreement.

estimated at $100.[3] And just as importantly, the proposed Settlement also provides meaningful prospective relief aimed at the challenged conduct by (i) prohibiting Defendant from disclosing its Michigan customers' protected information to any third-party marketing companies without first obtaining their written consent, and (ii) requiring Defendant to increase the transparency of its third party data-sharing practices—including those regarding the transfer of customer information.

It's also helpful to note that the Court need not review the settlement in a vacuum. That is, the proposed Settlement and relief provided therein follows the example of, and therefore is consistent with, settlements reached and approved in other similar VRPA class actions. In *Halaburda v. Bauer Publishing Co, LP*, 2:12-cv-12831, Dkt. 68 (E.D. Mich. January 6, 2015), the court granted final approval to a similar settlement, which (on behalf of a smaller class) created a $775,000 cash fund. There, as of final approval, claiming class members were expected to receive approximately $75, or roughly one quarter less than what class members should get in the instant settlement. And in *Kinder v. Meredith Corporation*, 1:14-cv-11284, Dkt. 72 (E.D. Mich. Oct. 5, 2015), the parties have moved for preliminary approval of a settlement (on behalf of a much larger class), which would establish a $7.5 million cash fund, and provide class members with a similarly estimated $100 per

---

[3] This estimation is based upon typical participation rates in consumer class action settlements.

approved claim, as well as similar injunctive relief to the class.

Further, the proposed Settlement also stacks up to or even exceeds privacy settlements reached in litigation involving similar statutes that have been approved throughout the country, many of which have provided only payments to *cy pres* or *de minimus* amounts to class members. *See, e.g.*, *Fraley v. Facebook, Inc*., 966 F. Supp. 2d 939 (N.D. Cal. 2013) (approving privacy settlement providing claimants with a cash payment of $15); *Lane v. Facebook, Inc*., 696 F.3d 811, 820-22 (9th Cir. 2012) cert. denied, 134 S. Ct. 8 (2013) (approving a $9.5 million settlement payment to *cy pres* as the sole form of monetary relief to class of more than 3 million individuals in case involving VPPA claims); *In re Netflix Privacy Litig*., 2013 WL 1120801 (N.D. Cal. March 18, 2013), *appeal dismissed* (Dec. 19, 2013), *appeal dismissed* (Mar. 26, 2014), *appeal dismissed* (May 2, 2014), *appeal dismissed* (June 23, 2014) (approving $9 million settlement payment to *cy pres* as the sole form of monetary relief to class of more than 60 million individuals in case involving VPPA claims); *In re Google Buzz Privacy Litig*., 2011 WL 7460099, at *3 (N.D. Cal. June 2, 2011) (approving $8.5 million *cy pres* settlement); *Landwehr v. AOL*, 11-cv-1014, Dkt. 133 (E.D. Va. May 24, 2013) (approving privacy settlement providing claimants with a cash payment of up to $100); *Davis v. Bank of Am.*, 05-cv-80806, Dkt. 46 (S.D. Fla. June 21, 2006) (approving privacy settlement providing claimants with a cash payment up to $150).

Ultimately, the relief attained for the proposed Settlement Class is exceptional and more than sufficient for the Court to preliminarily approve the Settlement. That's especially true given the risks and uncertainties inherent in complex litigation, this case no exception. Thus, Plaintiff respectfully requests that the Court grant her motion for preliminary approval in its entirety, direct that notice be disseminated to the Settlement Class, and set a final fairness hearing.

## II.    BACKGROUND

### A.    Michigan's Video Rental Privacy Act

A brief summary of the VRPA will give context to the proposed Settlement. The Michigan legislature passed the VRPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." M.C.L. § 445.1712. As such, the VRPA provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712. To enforce the statute, the VRPA authorizes civil actions and provides for the recovery of statutory damages in the amount of $5,000, plus costs and reasonable attorney fees. M.C.L. § 445.1715.

### B.    Plaintiff's Allegations

Rodale is a company that publishes some of the most widely circulated

4

magazines in the United States. (*See* Plaintiff's Class Action Complaint, Dkt. 1 ["Compl."], ¶ 1.) Plaintiff alleges that aside from selling magazine subscriptions, Rodale also sells its subscribers' personal information—including their full names, titles of magazines subscribed to, and home addresses (collectively "Personal Reading Information"), as well as other personal, lifestyle, and demographic information such as gender, age, ethnicity, income, net worth, religion, parental status, number of children in the household, charitable donations, and even health conditions—to data miners and other third parties. (*Id.* ¶¶ 2, 4, 40.) Plaintiff alleges that this information includes both data that Rodale collects from its own magazine subscribers and information obtained from data mining companies, like Acxiom Corporation. (*Id.* ¶ 39.)

Plaintiff further alleges that no matter how consumers subscribe (i.e., via postcard, over the phone, on its website, or through a subscription agent's website), they are never asked to provide Rodale with consent to disclose information related to their magazine subscriptions to third parties. (Compl. ¶¶ 43, 44.) This is because Rodale's customers are allegedly never presented with, or required to consent to, any terms or policies during the subscription process informing them of Rodale's disclosure practices. (*Id*. at ¶ 43.) Likewise, even after subscribing, Rodale allegedly fails to notify its customers that it will disclose any information to third parties, including their protected reading information. (*Id.*) Nonetheless, Plaintiff

5

alleges that Rodale discloses all of its customers' protected reading information to various third parties, including, *inter alia*, to Acxiom Corporation ("Acxiom") and Merkle Inc. ("Merkle"), without their consent or prior notice.

### C.   The Litigation History and Settlement Discussions

Plaintiff filed her class action lawsuit on July 9, 2014 in the United States District Court for the Eastern District of Michigan. (Dkt. 1.) On September 18, 2014, Defendant moved to dismiss Plaintiff's claims under Rules 12(b)(1) and (b)(6), arguing that she lacked both Article III and statutory standing because she did not suffer actual damages from the alleged disclosures. (Dkt. 14.) On February 11, 2015, after full briefing, the Court denied Defendant's motion to dismiss the VRPA claims. (Dkt. 27.) Defendant thereafter filed its Answer on February 25, 2015, which denied the allegations generally and raised 16 affirmative defenses. (Dkt. 21.) The Parties then exchanged initial disclosures and served written discovery on each other and third parties. (The Declaration of Ari J. Scharg ["Scharg Decl."] ¶ 3, a copy of which is attached hereto as Exhibit 2.)

Over the next eight months, the Parties engaged in substantial class- and merits-related discovery. (*Id.* ¶ 4.) During that time, Plaintiff reviewed and analyzed documents produced by Defendant and various third parties. (*Id.*) Plaintiff also took the depositions of a corporate representative that Defendant designated under Rule 30(b)(6), a corporate representative that was similarly

6

designated by Acxiom, and noticed the deposition of a corporate representative of Merkle. (*Id.*) For its part, Defendant conducted substantial written discovery on Plaintiff Coulter-Owens, and also took her deposition. (*Id.*)

On November 4, 2015—and with class certification briefing on the horizon—the Parties participated in a private mediation with the former Chief Judge of the Northern District of Illinois, the Honorable James F. Holderman (Ret.) at JAMS in Chicago, Illinois. (Scharg Decl. ¶ 5.) Despite a full day of mediation and numerous rounds of arm's-length negotiations, the Parties were unable to reach agreement on the terms of a class settlement and, as such, re-focused their efforts on the litigation (including, *inter alia*, rounding out certain issues relating to third party discovery). (*Id.* ¶ 6.) Nevertheless, the Parties continued to discuss the possibility of settlement, and on December 2, 2015, the Parties returned to JAMS for a second mediation. (*Id.* ¶ 7.) Finally, with the continued assistance of Judge Holderman, they ultimately reached an agreement on the principal terms of the Settlement which is now before the Court. (*Id.*)

## III.    TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement (which is attached as Exhibit 1), and are briefly summarized as follows:

### A.    Class Definition

The "Settlement Class" is defined as:

> All persons with Michigan street addresses who, between July 1, 2009 and
> the date of Preliminary Approval, purchased a subscription to a Rodale
> Publication.[4]

(Agreement ¶ 1.30.)

### B.   Monetary Relief

Defendant shall establish a $4.5 million non-reversionary Settlement Fund,

from which each Settlement Class Member who submits a valid claim shall be

entitled to a *pro rata* portion, after payment of notice and administrative expenses,

attorneys' fees, and an incentive award. (Agreement ¶¶ 1.32, 2.1.) No portion of

the Settlement Fund will revert back to Defendant. (*Id.* ¶ 2.1.)

### C.   Prospective Relief

For a period of four (4) years from the date of entry of the Preliminary

Approval Order, Rodale agrees to not disclose any of its Michigan subscribers'

Personal Reading Information to any third-party companies without prior written

consent. (Agreement ¶ 2.2.) In addition, Rodale agrees to add language to its

privacy policy to clarify that it may disclose Personal Reading Information to

certain companies for the purpose of performing internal business functions (*Id.*)

---

[4] Excluded from the Settlement are (1) any Judge or Magistrate Judge presiding
over this Action and members of their families, (2) the Defendant, Defendant's
subsidiaries, parent companies, successors, predecessors, and any entity in which
the Defendant or its parents have a controlling interest and their current or former
officers, directors, agents, attorneys, and employees, (3) persons who property
execute and file a timely request for exclusion from the class, and (4) the legal
representatives, successors, or assigns of any such excluded persons. (*Id.*)

### D.     Release

In exchange for the relief described above, Defendant and each of its related and affiliated entities (the "Released Parties" defined in ¶ 1.25 of the Settlement) will receive a full release of all claims arising out of or related to Defendant's disclosure of its Michigan customers' magazine subscription information. (*See* Agreement ¶¶ 1.24-1.26 for full release language.)

### E.     Notice and Administration Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. (Agreement ¶¶ 1.28, 1.32.)

### F.     Incentive Award

In recognition of her efforts on behalf of the Settlement Class, Defendant has agreed that Plaintiff Coulter-Owens is entitled to receive, subject to Court approval, an incentive award of $5,000 from the Settlement Fund as appropriate compensation for her time and effort serving as class representative and party to the Action. Defendant will not oppose any request limited to this amount. (Agreement ¶ 8.3.)

### G.     Attorneys' Fees and Expenses

Defendant has agreed that the Settlement Fund may be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action, in an

amount to be approved by the Court. (Agreement ¶¶ 1.32, 8.1.) Class Counsel have agreed to petition the Court for no more than 40% of the Settlement Fund, and Defendant has agreed not to oppose any request limited to this amount. (*Id*. ¶ 8.1.)

## IV.   THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before granting preliminary approval of the proposed Settlement, the Court must determine that the proposed settlement class is appropriate for certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013). Additionally, because Plaintiff seeks certification under Rule 23(b)(3), she must also demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. *Amchem*, 521 U.S. at 615-16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re Whirlpool Corp. Front-Loading Washing Products Liability Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As explained below, the proposed Settlement Class satisfies all of the Rule 23(a) and 23(b)(3) prerequisites, and thus, should be certified.

Recently, in a detailed opinion performing the "rigorous analysis" required by Rule 23, the Honorable George C. Steeh certified a class of purchasers of

10

magazines published by Time, Inc. alleging that Time disclosed their protected information to Acxiom and third party Wiland Direct. *Coulter-Owens v. Time Inc.*, 2015 WL 4527822 (E.D. Mich. July 27, 2015). Likewise, a similar class of magazine purchasers was certified last fall in the *Bauer* action. *Halaburda v. Bauer Publ'g Co.*, 2:12-cv-12831, Dkt. 63 (E.D. Mich. Sept. 26, 2014). Like the classes in those cases, the proposed Settlement Class here should be certified.

### A.    The Numerosity Requirement is Satisfied

The numerosity requirement is met when joining such a large number of plaintiffs in a single suit would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Although there is no fixed numerical threshold for determining impracticability of joinder, a "substantial amount of members will suffice." *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 520 (E.D. Mich. 2013). Only a reasonable estimate or some evidence of the number of members in the purported class is required. *Id.*; *see also Curry v. SBC Comm'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008) (noting that 40 class members is sufficient to satisfy the numerosity requirement).

Here, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. According to Rodale's records, the proposed Settlement Class is comprised of approximately 580,000 Michigan residents who purchased a Rodale magazine subscription between July 1, 2009 and the time of this filing. (Scharg

Decl. ¶ 15.) Thus, there is no question that joinder of all members of the Settlement Class would be impractical, and numerosity is therefore satisfied.

### B.     The Commonality Requirement is Satisfied

The second requirement for certification mandates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The threshold for demonstrating the commonality requirement is not high, as "complete identity of issues is not required," *Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528, 536 (E.D. Mich. 2013), and is satisfied when there is one question common to the class, the resolution of which will advance the litigation. *Whirlpool Litig.*, 722 F.3d at 582-83.

Here, the common contention on which the claims of all class members depend is that Rodale disclosed each of its customers' protected information to third parties—here, Acxiom and Merkle—in violation of the VRPA. Determination of the truth or falsity of this contention will resolve an issue—the issue—central to each class member's claims at once.

Determining the truth or falsity of this common contention raises numerous common questions that track the elements of a VRPA claim, including: (1) whether Rodale is "engaged in the business of selling at retail . . . written materials," (2)

12

whether Rodale disclosed "information concerning the purchase . . . of those materials by a customer" to Acxiom and Merkle, (3) whether the disclosed records or information indicated the customers' identities, (4) whether Rodale obtained written permission prior the disclosures, (5) whether all the disclosures were made "for the exclusive purpose of marketing goods and services directly to the consumer," and if so, (6) whether Rodale accurately informed its subscribers that they could remove their names at any time from the disclosed subscriber lists. M.C.L. § 445.1712. As such, it is a common question whether Plaintiff and the members of the proposed Settlement Class all suffered the same injuries that entitle them to resulting damages. *Dukes*, 131 S. Ct. at 2551. Each of these legal questions can be determined on a class-wide basis using the same evidence regarding Rodale's practices. *See Coulter-Owens*, 2015 WL 4527822, at *7-9 (finding the litigation was "driven by issues that are common to the entire putative class.").

Numerous federal courts have similarly held that cases like this one—in which defendants are accused of uniformly disclosing information protected by a privacy statute—raise common issues of fact or law. *See, e.g., id.* at *7 (finding that, in case alleging magazine publisher's alleged violation of the VRPA, "the litigation is driven by issues that are common to the entire putative class"); *Supnick v. Amazon.com, Inc.*, 2000 WL 1603820, at *1 (W.D. Wash. May 18, 2000) (finding commonality established where the defendants engaged in common course

13

of conduct toward every member of proposed class: disclosing their personal information without their consent).

Given that there are multiple questions of law and fact common to members the Settlement Class, the commonality requirement is satisfied.

### C.    The Typicality Requirement is Satisfied

The next prerequisite—typicality—requires that class representative has claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.,* 75 F.3d at 1082. The test for typicality is not demanding and does not require the interests and claims of the plaintiffs to be identical. *Reese v. CNH America, LLC,* 227 F.R.D. 483, 487 (E.D. Mich. 2005). "Typicality may be presumed when the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001). In other words, when the basis of the suit is the defendant's systematic business practices towards the named plaintiff and the members of the proposed class, typicality is satisfied.

Here, Plaintiff alleges that Rodale discloses all of the Settlement Class Members' subscription information to third parties (including Acxiom and Merkle)

14

without consent in the exact same manner and for the exact same purpose as a matter of policy and practice. Plaintiff alleges that such conduct violates the VRPA, which provides identical statutory damages to all members of the Settlement Class. Plaintiff's representation of the Settlement Class is, therefore, appropriate because they were all subjected to the same alleged unlawful conduct (i.e., Rodale's allegedly unlawful disclosures), and as a result, are entitled to identical statutory damages. Accordingly, by pursuing her own claims in this matter, Plaintiff will necessarily advance the interests of the Settlement Class, and thus, typicality is satisfied. *See, e.g., Coulter-Owens*, 2015 WL 4527822, at *10 (finding "the typicality factor favors class certification"); *Date v. Sony Electronics, Inc.*, 2013 WL 3945981, at *3 (E.D. Mich. July 31, 2013) ("Because all Class Members' claims arise from the same course of conduct . . . their claims are based on the same legal theory and the typicality requirement, which is not onerous, is met."); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997) (finding typicality met where "the class representatives' claims arose from the same events, legal documents, and consequences and legal theories affecting all class members).

### D.     The Adequacy Requirement is Satisfied

The final Rule 23(a) prerequisite requires that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P.

15

23(a)(4). "The two criteria for determining whether class representatives are adequate are (1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at \*19 (E.D. Mich. July 13, 2006) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013). Adequacy exists when the named plaintiff is a part of the class, possesses the same interest, suffered the same injury, and thus, seeks the same type of relief as the other class members. *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 562 (6th Cir. 2007).

In this case, Plaintiff Coulter-Owens—like each and every one of the Settlement Class Members—is a Michigan customer that purchased a magazine subscription from Rodale and then allegedly had their subscription information disclosed to third parties, including Acxiom and Merkle, without consent. Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are entitled under the VRPA and ensuring that such allegedly unlawful disclosures do not continue in the future. As such, Plaintiff Coulter-Owens does not have any interests antagonistic to those of the proposed Settlement Class and her pursuit of this litigation should be clear evidence of that.

16

Likewise, proposed Class Counsel—Jay Edelson, Ari J. Scharg, and Benjamin S. Thomassen of Edelson PC—have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. (Scharg Decl. ¶ 8.) They regularly engage in major complex litigation involving consumer privacy issues, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (*Id.*); *see also* Firm Resume of Edelson PC, attached hereto as Exhibit 2-A); *In re Netflix Privacy Litig.*, 11-cv-00379, Dkt. 59 (N.D. Cal. Aug. 12, 2011) (appointed Interim Class Counsel in adversarial leadership dispute, during which the court noted that the Edelson firm "specializes in class actions relating to consumer technology and privacy issues" and that the "firm's significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class"); *In re Facebook Privacy Litig.,* 10-cv-02389, Dkt. 69 (N.D. Cal. 2010) (noting that the attorneys at Edelson are "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue"); *Harris v. comScore*, Inc., 292 F.R.D. 579, 581 (N.D. Ill. 2013) (achieved adversarial certification in the largest-ever privacy class action and appointed class counsel); *Coulter-Owens,* 2015 WL 4527822, at *12 (achieved adversarial certification in a similar VRPA class action against a magazine publisher and appointed class

17

counsel); *Halaburda*, 2:12-cv-12831, Dkt. 63 (appointed class counsel in a similar VRPA class action that settled on favorable terms).

Further, proposed Class Counsel have devoted substantial resources to the prosecution of this action, including by investigating Plaintiff's claims and that of the Settlement Class, aggressively pursuing those claims through hard fought litigation, engaging in contentious motion practice, completing extensive class and merits discovery, participating in two private mediations with Hon. James F. Holderman (Ret.) of JAMS in Chicago, Illinois, and ultimately, negotiating a favorable resolution. (Scharg Decl. ¶¶ 9-14.) In short, proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency. (*Id.*)

Accordingly, since Plaintiff and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to them, the adequacy requirement is satisfied.

### E.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

After meeting the prerequisites of Rule 23(a), a plaintiff seeking class certification must also show that the action qualifies under at least one of the categories outlined in Rule 23(b). Fed. R. Civ. P. 23(b); *Merenda*, 296 F.R.D. at 535. Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that

18

(ii) a class action is superior to the other available methods for the fair an efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As explained below, the proposed Settlement Class meets these requirements.

### 1.    *Common Questions of Law and Fact Predominate*

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes,* 131 S. Ct. at 2551-57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 251 U.S. at 623. The Rule 23(b)(3) predominance requirement is akin to the commonality requirement of Rule 23(a) in that both require the existence of common questions of law and fact—however, Rule 23(b) imposes the more stringent requirement that common issues predominate over individual issues. *Machesney v. Lar-Bev of Howell, Inc.,* 292 F.R.D. 412, 423 (E.D. Mich. 2013). In other words, where as commonality is satisfied when there is a single factual or legal question common to the class, the "predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007). Common issues are at the heart of a case when there is generalized evidence that would prove or disprove an element of the action on a class-wide basis. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 339 (E.D. Mich. 2001); *see also Powers*, 501 F.3d at 619 (noting that "cases alleging a single course of

19

wrongful conduct are particularly well-suited to class certification.").

In this case, there are several common factual and legal questions that are at the center of this action: (1) whether Rodale is "engaged in the business of selling at retail . . . written materials," (2) whether Rodale disclosed "information concerning the purchase . . . of those materials" to Acxiom and Merkle, (3) whether the disclosed records or information indicated the customers' identities, (4) whether Rodale obtained written permission prior the disclosures, (5) whether all the disclosures were made "for the exclusive purpose of marketing goods and services directly to the consumer," and if so, (6) whether Rodale properly informed its subscribers that they could remove their names at any time from the disclosed subscriber lists. These questions predominate over any issues affecting individual members (to the extent there are any) and are subject to common proof (i.e., examination of Rodale's uniform conduct).

Since Rodale engaged in a single course of conduct with respect to all members of the Settlement Class, their claims "will prevail or fail in unison," and as such, predominance is met. *Whirlpool*, 722 F.3d at 859 (quoting *Amgen*, 133 S. Ct. at 1191).

## 2. *A Class Action is a Superior Method for Adjudicating this Action*

A class action is a superior means of adjudicating the controversy when it would "achieve economies of time, effort and expense and promote . . . uniformity

2:14-cv-12688-RHC-RSW   Doc # 42   Filed 12/23/15   Pg 30 of 42   Pg ID 376

of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615. Class

actions are preferred over small, individual suits for damages because they provide

a mechanism through which individuals who, under other circumstances, would

not have the opportunity to seek redress from the defendant through litigation, can

do so. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2010); *see*

*also Amchem,* 521 U.S. at 617. Actions alleging a standard course of wrongful

conduct are particularly well-suited for class certification because they facilitate

efficiency and uniformity. *Young*, 693 F.3d at 545*; Powers*, 501 F.3d at 619

("cases alleging a single course of wrongful conduct are particularly well-suited to

class certification"). As Judge Steeh held in *Coulter-Owens*, "given the

commonalities, it makes sense to proceed as a class action and address the issues

one time rather than [in] potentially hundreds of separate cases." 2015 WL

4527822, at *12. And in the context of certifying a class for settlement purposes,

"a district court need not inquire whether the case, if tried, would present

intractable management problems, for the proposal is that there be no trial."

*Amchem*, 521 U.S. at 620.

Here, all questions necessary to determine whether Rodale violated the

VRPA are common to all Settlement Class Members. As such, a class action is a

much more efficient use of judicial and party resources than multiple actions. *In re*

*Cardizem CD Antitrust Litig.*, 200 F.R.D. at 326. Further, absent a class action,

21

members of the Settlement Class would almost certainly find the cost of individually litigating their claims to be prohibitive. Indeed, no other member of the proposed Settlement Class has brought any VRPA claims against Defendant, and thus, "there is no indication that any class member wants to individually control his or her own separate action." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 408 (E.D. Mich. 2012).

In addition, many members of the proposed Settlement Class may not even be aware that Rodale is allegedly disclosing their protected information to third parties. Where consumers are unlikely to discover (and vindicate) their injuries absent certification of a class, class treatment is superior to the alternatives. *Young*, 693 F.3d at 545-46.

In the end, because common questions predominate and a class action is the superior method for adjudicating the controversy, maintenance of this action as a class action is appropriate.

## V. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers proposed class counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of

22

claims asserted in the action, (3) knowledge of the applicable law, and (4)

resources that it will commit to representing the class. Fed. R. Civ. P.

23(g)(1)(A)(i)-(iv).

As discussed above, proposed Class Counsel have extensive experience in

prosecuting consumer privacy class actions. (*See* Scharg Decl. ¶ 8; *see also* Firm

Resume of Edelson PC, attached to the Scharg Decl. at Ex. 2-A.) And as a result of

their zealous efforts in this case, proposed Class Counsel have secured a settlement

that provides substantial monetary relief, as well as the prospective relief necessary

to protect the Settlement Class Members' privacy going forward. Thus, the Court

should appoint Jay Edelson, Ari J. Scharg, and Benjamin S. Thomassen of Edelson

PC as Class Counsel.

## VI.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The procedure for review of a proposed class action settlement is a well-

established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*,

§ 11.25, at 38-39 (4th Ed. 2002). The first step is a "preliminary, pre-notification

hearing to determine whether the proposed settlement is within the range of

possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4

(E.D. Mich. Aug. 2, 2010). The Manual for Complex Litigation characterizes the

preliminary approval stage as an "initial evaluation" of the fairness of the proposed

settlement made by a court on the basis of written submissions and informal

presentations from the settling parties. *Manual for Complex Litigation* § 21.632 (4th ed. 2004).

While the Sixth Circuit has expressed a strong judicial policy favoring the voluntary conciliation and settlement of complex class action litigation, *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007), it has not specified a particular standard for granting preliminary settlement approval. Nevertheless, courts in this district generally look to two factors in making this determination. That is, preliminary approval should be given where the proposed settlement (1) does not disclose grounds to doubt its fairness, and (2) falls within the range of possible approval. *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4; *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *8 (E.D. Mich. Aug. 2, 2010). *See also Ford Motor Co.,* 2006 WL 1984363, at *4 ("The Court finds that the proposed settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies"). The proposed Settlement in this case—which achieves both monetary payments for the Settlement Class and strong prospective relief—easily satisfies both factors.

First, there are no grounds upon which to doubt the Settlement's fairness. The proposed Settlement was reached only after a year and half of hard-fought litigation, which included Rule 12(b)(1) and 12(b)(6) motion practice, the completion of full class and merits discovery, the production and review of

documents, the deposition of Defendant's corporate representative, the deposition of Acxiom's corporate representative, the deposition of Plaintiff Coulter-Owens, and two private mediations. (Scharg Decl. ¶ 4.) It was only then—with the assistance of Hon. James F. Holderman (Ret.) of JAMS and after numerous rounds of arm's-length negotiations over two separate sessions—that the Parties were able to agree on the terms of a class-wide settlement. (*Id.* ¶¶ 5-7.) As such, the Parties had sufficient information to make knowledgeable decisions about settlement throughout the negotiations, and there are certainly no grounds from which to doubt the fairness of the Settlement. *See Sheick*, 2010 WL 3070130, at *13 ("negotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy"); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597–98 (E.D. Mich. 2006) (finding that courts presume an absence of fraud or collusion absent evidence to the contrary).

Second, the strength of Plaintiff's case compared to the settlement offer demonstrates that the proposed Settlement is fair, reasonable, and adequate, and well within the range of possible approval. Here, while Plaintiff and proposed Class Counsel are confident in Plaintiff's claims, they are cognizant of the risks that would accompany further litigation. (Scharg Decl. ¶¶ 11-14.) Indeed, Rodale has made clear that absent a settlement, it would continue its vigorous defense of

25

this case. (*Id.* ¶¶ 12-13.) And of course, without a settlement, there would be the uncertainty and expense of trial, and the risks and delay of inevitable appeals. *See UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006) ("The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement.").

More specifically, Plaintiff is aware that Rodale would continue to assert a number of defenses on the merits, including that the VRPA neither prohibits the disclosure of the magazine subscription information at issue (because, according to Rodale, Acxiom and Merkle are its agents), nor applies to Rodale at all because it is not engaged in the business of selling magazines "at retail," as is required to come under the scope of the statute. (Scharg Decl. ¶ 12.) Further, Rodale has made clear that it would continue to challenge the constitutionality of the VRPA, as well as its applicability to magazines in particular and the magazine publishing industry in general. (*Id.*) Looking beyond trial, Plaintiff is also keenly aware of the fact that Rodale would appeal the merits of any adverse decision, and that in light of the massive aggregate statutory damages in play, it would attempt to argue—in both the trial and appellate courts—for a reduction of damages based on due process concerns.[5] (*Id.* ¶ 13); *see, e.g., Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22

---

[5] Though Plaintiff maintains that the sheer size of a class-wide statutory damages award cannot render it unconstitutional—*see* Daniel R. LeCours, Note, *Steering*

(2d Cir. 2003) ("the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues.").

Given these concerns, Plaintiff and Class Counsel view the creation of the non-reversionary $4.5 million Settlement Fund—with its estimated $100 per claimant payment—as well as the required injunctive and prospective relief, to be an extraordinary result for the class. This is especially true considering the "all or nothing" nature of Plaintiff's statutory claims: if she were to lose any aspect of this case, the class would get nothing. *See Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 833 (E.D. Mich. 2008) ("The parties recognize, and the Court concurs, that continued litigation would be a high stakes "zero sum" undertaking, in which one party is likely to achieve complete victory while the opposing party experiences complete defeat because the parties' core positions . . . are irreconcilable."); *see also Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) ("The fact that the settlement amount may equal but a fraction of

---

*Clear of the "Road to Nowhere": Why the BMW Guideposts Should Not be Used to Review Statutory Penalty Awards,* 63 Rutgers L. Rev. 327 (2010); *cf. Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 523 U.S. 424, 443 (2001) ("I continue to believe that the Constitution does not constrain the size of punitive damages awards.") (Thomas, J. concurring) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 599 (1996) (Scalia, J., joined by Thomas, J., dissenting))—she acknowledges that if she obtained a judgment on the merits and was awarded statutory damages, the $3 billion damages award would likely be reduced.

potential recovery does not render the settlement inadequate. Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.").

Further, in terms of monetary relief, the Settlement's projected $100 per-claim payment exceeds the *Halaburda v. Bauer* settlement—which is, to date, the only other VRPA case to settle and achieve final approval. *See, e.g., Halaburda*, 2:12-cv-12831 (granting final approval to a settlement that provided claimants with an estimated $75 and similar injunctive relief). The relief also meets, and in many cases exceeds, the relief provided to class members in other privacy settlements involving similar statutes that have been approved throughout the country, many of which have provided only payments to *cy pres* or *de minimus* amounts to class members. *See, e.g., Fraley*, 966 F. Supp. 2d at 948 (approved settlement providing claimants with a cash payment of $15 in right to publicity case with potential statutory damages of $750); *Lane*, 696 F.3d at 820-22 (approving a $9.5 million settlement payment to *cy pres* as the sole form of monetary relief to class of more than 3 million individuals in case involving VPPA claims); *In re Netflix Privacy Litig.*, 5:11-cv-00379, Dkt. 256 (approving $9 million settlement payment to *cy pres* as the sole form of monetary relief to class of more than 60 million individuals in case involving VPPA claims); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3 (approving $8.5 million payment to *cy pres* as the sole

form of monetary relief in ECPA case with potential statutory damages of $10,000); *Landwehr*, 11-cv-1014, Dkt. 133 (approving settlement providing claimants with a payment of up to $100 in Electronic Communications Protection Act ["ECPA"] case with potential statutory damages of $10,000)*; Davis*, 05-cv-80806, Dkt. 46 (approving settlement providing claimants with a payment of up to $150 in Driver's Privacy Protection Act case with potential statutory damages of $5,000). Thus, the proposed Settlement is eminently fair, reasonable, and in line with the results achieved by other statutory privacy class actions that have received final approval from courts in this District and across the country.

For these reasons, Plaintiff and proposed Class Counsel firmly believe that the monetary and prospective relief provided by the Settlement weighs heavily in favor of a finding that that the Settlement is fair, reasonable, and adequate, and well within the range of possible approval. (Scharg Decl. ¶ 14.) Accordingly, the Court should grant preliminary approval.

## VII.   THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

Rule 23 and Due Process require that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he

29

court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23 (c)(2)(B). Notice is "adequate if it may be understood by the average class member." *Newberg*, § 11:53 at 167.

Here, the Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and due process. First, the Settlement Administrator will send direct notice by email to all Settlement Class Members for whom a valid email address is identified in Rodale's records. (Agreement ¶ 4.1(b); Exhibit 1-B.) The email will contain an electronic link to the online claim form. (*Id.*) Next, the Settlement Administrator will send direct notice by First Class U.S. Mail, along with a postcard claim form with prepaid return postage, to all Settlement Class Members who did not receive an email. (Agreement ¶ 4.1(c); Ex. 1-C.) Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice" (Ex. 1-D), as well as access to important

30

Court documents, upcoming deadlines, and the ability to file claim forms online.[6] (*Id.* ¶ 4.1(d).) The Settlement Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (*Id.* ¶ 4.1(e).)

In sum, the proposed methods for providing notice to the Class comports with both Rule 23 and Due Process, and thus, should be approved by the Court.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Class Action Settlement Agreement, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) approving the form and content of the notice to the members of the Settlement Class, (iv) appointing Plaintiff Coulter-Owens as Class Representative, (v) appointing Jay Edelson, Ari J. Scharg, and Benjamin S. Thomassen of Edelson PC as Class Counsel, (vi) scheduling a Final Fairness Hearing in this matter, and (vii) providing such other and further relief as the Court deems reasonable and just.[7]

---

[6]  The Settlement Website URL is www.MichiganMagazineSettlement.net.
[7]  A [Proposed] Preliminary Approval Order is attached hereto as Exhibit 3.

Respectfully submitted,

**ROSE COULTER-OWENS**, individually
and on behalf of a class of similarly situated
individuals


Dated: December 23, 2015            By: /s/ Ari J. Scharg
                                    One of her attorneys

                                    Jay Edelson
                                    jedelson@edelson.com
                                    Ari J. Scharg
                                    ascharg@edelson.com
                                    Benjamin S. Thomassen
                                    bthomassen@edelson.com
                                    EDELSON PC
                                    350 North LaSalle Street, Suite 1300
                                    Chicago, Illinois 60654
                                    Tel: 312.589.6370
                                    Fax: 312.589.6378

                                    Henry M. Scharg
                                    hmsattyatlaw@aol.com
                                    LAW OFFICE OF HENRY M. SCHARG
                                    718 Ford Building
                                    Detroit, Michigan 48226
                                    Tel: 248.596.1111
                                    Fax: 248.671.0335

                                    *Proposed Class Counsel*

32

**<u>CERTIFICATE OF SERVICE</u>**

I, Ari J. Scharg, an attorney, hereby certify that on December 23, 2015, I served the above and foregoing ***Plaintiff's Unopposed for Preliminary Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system on this, the 23rd day of December 2015.


/s/ Ari J. Scharg