# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| ROSE COULTER-OWENS, individually and on behalf of all others similarly situated, | Case No. 2:14-cv-12688-RHC-RSW |
| Plaintiff, | Honorable Robert H. Cleland |
| v. | |
| RODALE INC., a Pennsylvania Corporation, | |
| Defendant. | |

## PLAINTIFF'S MOTION FOR AND BRIEF IN SUPPORT OF
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: 248.596.1111

*Counsel for the Plaintiff and the Settlement Class*

## PLAINTIFF'S MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Rose Coulter-Owens respectfully moves the Court to grant her Motion for Final Approval of Class Action Settlement. Specifically, Coulter-Owens requests that the Court find (i) that notice to the Settlement Class satisfies the requirement of Due Process and Rule 23, and (ii) that the instant Settlement is fair, reasonable, and adequate and merits final approval. In accordance with Local Rule 7.1(a), counsel for Defendant will not oppose the relief sought by this motion. (Dkt. 42-2 § 7.3).

For the reasons discussed in the accompanying memorandum, Plaintiff's Motion should be granted.

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**STATEMENT OF ISSUES PRESENTED**

1. Whether this Court should find that notice to the Settlement Class satisfies the requirements of Due Process, Federal Rule of Civil Procedure 23, and the Class Action Fairness Act, 28 U.S.C. § 1715, when direct notice, detailing the terms of the Settlement Agreement and individual options for objecting, opting-out, or submitting a claim, was transmitted via email and postcard and reached 96.6 % of the class?

   **Plaintiff's answer: Yes.**

2. Whether this Court should grant final approval to the Settlement Agreement, finding it fair, reasonable, and adequate, when it advances the privacy interests that the Michigan Video Rental Privacy Act, M.C.L. §§445.1711-15 ("VRPA") was enacted to protect and delivers meaningful prospective and monetary relief to the Settlement Class, ensuring that their personal information is kept private from third parties?

   **Plaintiff's answer: Yes.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITY

**UNITED STATES SUPREME COURT CASES:**

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*,
    636 F.3d 235 (6th Cir. 2011)

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007)

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983)

**UNITED STATES DISTRICT COURT CASES:**

*Halaburda v. Bauer Publ'g Co.*,
    No. 12-cv-12831 (E.D. Mich. 2015)

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003)

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008)

*UAW v. Gen. Motors Corp.*,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006)

**MISCELLANEOUS:**

Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process
    Checklist and Plain Language Guide (2010)

Fed. R. Civ. P. 23

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION .................................................................... 1

II.    BACKGROUND ...................................................................... 3

      A.     Plaintiff's Allegations ................................................. 4

      B.     The Road to the Settlement Agreement ................... 5

III.   TERMS OF THE SETTLEMENT AGREEMENT ................. 6

      A.     Class Definition ........................................................... 6

      B.     Monetary Relief ........................................................... 7

      C.     Prospective Relief ....................................................... 7

      D.     Additional Relief ......................................................... 7

           1.     Payment of notice and settlement administration expenses .... 7

           2.     Payment of incentive award, attorneys' fees, and expenses .... 8

      E.     Release ........................................................................... 8

IV.   THE NOTICE PLAN COMPORTS WITH DUE PROCESS ..................... 8

V.     THE SETTLEMENT WARRANTS FINAL APPROVAL ....................... 11

      A.     Plaintiff's Likelihood of Success on the Merits, Balanced Against the Benefits of Settlement, Weighs in Favor of Final Approval ...... 12

      B.     In Protecting Reader Privacy and Conserving Judicial Resources, the Settlement Serves the Public Interest ........................... 18

      C.     The Complexity, Expense, and Duration of Further Litigation Favor Final Approval ................................................. 20

**D.**   **The Stage of the Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval**.................................... 21

**E.**   **The Opinion of Class Counsel Supports Final Approval** ................. 23

**F.**   **The Reaction of Absent Class Members Favors Final Approval** .... 24

**G.**   **The Settlement is Free from Fraud and Collusion** ........................... 25

**VI.**   **CONCLUSION** ................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

**<u>United States Supreme Court Cases:</u>**

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
    532 U.S. 424 (2001) .................................................................................. 14

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) .................................................................................... 8

**<u>United States Circuit Court of Appeals Cases:</u>**

*Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008) ...................................................................... 9

*Gascho v. Glob. Fitness Holdings*, LLC,
    No. 14-3761, 2016 WL 2802473 (6th Cir. May 13, 2016) ............... 9, 12, 16

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) .................................................................. 12

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
    726 F.2d 1075 (6th Cir. 1984) .................................................................. 13

*In re Pampers Dry Max Litig.*,
    724 F.3d 713 (6th Cir. 2013) .................................................................... 27

*Lane v. Facebook, Inc.*,
    96 F.3d 811 (9th Cir. 2012) ...................................................................... 17

*Olden v. Gardner*,
    294 F. App'x 210 (6th Cir. 2008) .............................................................. 25

*Parker v. Time Warner Entm't Co., L.P.*,
    331 F.3d 13 (2d Cir. 2003) ........................................................................ 14

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*,
    636 F.3d 235 (6th Cir. 2011) .......................................................... 12, 13, 22

*UAW v. Gen. Motors Corp.*,
　　497 F.3d 615 (6th Cir. 2007) ................................................................ passim

*Williams v. Vukovich*,
　　720 F.2d 909 (6th Cir. 1983) .................................................... 11, 12, 19, 23

**United States District Court Cases:**

*Birchmeier v. Caribbean Cruise Line, Inc.*,
　　302 F.R.D. 240 (N.D. Ill. 2014) ................................................................ 24

*Boelter v. Hearst Commc'ns, Inc.*,
　　No. 15 CIV. 3934 (AT), 2016 WL 3369541(S.D.N.Y. June 17, 2016) ....... 15

*Coulter-Owens v. Time, Inc.*,
　　No. 12-CV-14390, 2016 WL 612690 (E.D. Mich. Feb. 16, 2016), ............. 14

*Dick v. Sprint Commc'ns Co. L.P.*,
　　297 F.R.D. 283 (W.D. Ky. 2014) ........................................................... 9, 26

*Fraley v. Facebook, Inc.*,
　　966 F. Supp. 2d 939 (N.D. Cal. 2013)........................................................ 17

*Gentrup v. Renovo Servs., LLC*,
　　2011 WL 2532922 (S.D. Ohio June 24, 2011)............................................ 12

*Hainey v. Parrott*,
　　617 F. Supp. 2d 668 (S.D. Ohio 2007) ................................................. 19, 26

*Halaburda v. Bauer Publ'g Co.*,
　　No. 12-cv-12831, Dkt. 68 (E.D. Mich. Jan. 6, 2015) ........................ 3, 16, 24

*Halaburda v. Bauer Publ'g Co.*,
　　No. 12-cv-12831, Dkt. 69 (E.D. Mich. Jan. 15, 2015) ............................... 18

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*,
　　2013 WL 692856 (E.D. Mich. Feb. 26, 2013) ............................................ 11

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ........................................................ passim

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ................................................. 9

*In re Facebook Privacy Litig.*,
  No. 10-cv-02389 (N.D. Cal. Dec. 10, 2010) ................................................. 24

*In re Google Buzz Privacy Litig.*,
  2011 WL 7460099 (N.D. Cal. June 2, 2011)................................................. 17

*In re Netflix Privacy Litig.*,
  No. 11-cv-00379, Dkt. 59 (N.D. Cal. Aug. 12, 2011)................................. 23

*In re Packaged Ice Antitrust Litig.*,
  2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ........................................... 20

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
  1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ...................................... 18, 22

*In re Teletronics Pacing Sys., Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001)......................................................... 20

*Int'l Union v. Ford Motor Co.*,
  2006 WL 1984363 (E.D. Mich. July 13, 2006)........................................... 23

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006)........................................................ 22, 26

*Kinder v. Meredith Corp.*,
  No. 14-cv-11284, Dkt. 76 (E.D. Mich. Feb. 5, 2016) ............................... 24

*Kinder v. Meredith Corp.*,
  No. 14-cv-11284, Dkt. 81 (E.D. Mich. May 18, 2016) ............................... 3

*Kogan v. AIMCO Fox Chase, L.P.*,
  193 F.R.D. 496 (E.D. Mich. 2000)............................................................... 25

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. Nov. 23, 2015) .................................................. 24

*Lasalle Town Houses Coop. Ass'n v. City of Detroit*,
    2016 WL 1223354 (E.D. Mich. Mar. 29, 2016)........................................... 13

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008) ............................................... passim

*Lonardo v. Travelers Indem. Co.*,
    706 F. Supp. 2d 766 (N.D. Ohio 2010) ...................................................... 16

*Olden v. LaFarge Corp.*,
    472 F. Supp. 2d 922 (E.D. Mich. 2007) ...................................................... 17

*Sheick v. Auto. Component Carrier, LLC*,
    2010 WL 3070130 (E.D. Mich. Aug. 2, 2010)............................................ 26

*Sims v. Pfizer, Inc.*,
    2016 WL 772545 (E.D. Mich. Feb. 24, 2016) ............................................ 19

*Stinson v. Delta Mgmt. Assocs., Inc.*,
    302 F.R.D. 160 (S.D. Ohio 2014)................................................................ 20

*Thacker v. Chesapeake Appalachia, L.L.C.*,
    695 F. Supp. 2d 521 (E.D. Ky. 2010) ......................................................... 21

*UAW v. Gen. Motors Corp.*,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006).................................. 9, 17, 20

*Whitford v. First Nationwide Bank*,
    147 F.R.D. 135 (W.D. Ky. 1992) ................................................................ 19

**Miscellaneous:**

2016 PA 92, M.C.L. § 445.1711, *et seq*. .................................................... 14

28 U.S.C. §§ 1711-1715 ........................................................................... 10

Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process
    Checklist and Plain Language Guide (2010) .................................................. 9

Fed. R. Civ. P. 23 ............................................................................... passim

*Frank W. Lynch & Co. v. Flex Technologies*
    463 Mich. 578, 624 N.W.2d 180 (2001) ...................................... 15

House Legis. Analysis Section, H.B. No. 5331 ...................................... 19

M.C.L. § 445.1711 ............................................................................. 1, 14

## I.     INTRODUCTION

Plaintiff Rose Coulter-Owens respectfully requests that this Court grant final approval to the Class Action Settlement Agreement[1] reached with Defendant Rodale Inc. If finally approved, this Agreement resolves claims that Rodale violated Michigan's Preservation of Personal Privacy Act—popularly known as the Video Rental Privacy Act or VRPA, M.C.L. § 445.1711—by disclosing the magazine reading choices of Michigan magazine subscribers to third parties without their consent. The Settlement is an excellent result for the Settlement Class and was reached only after substantial litigation and multiple mediation sessions with a retired federal judge. It provides not only meaningful monetary compensation for the statutory privacy violations that are alleged to have occurred, but also delivers robust prospective relief by requiring Rodale to stop disclosing any Michigan subscriber information to third-party companies without prior express written consent for a period of four years.

On May 3, 2016, this Court preliminarily approved the Settlement and directed that notice be disseminated to the Settlement Class. (Dkt. 44.) Since then, the Settlement Administrator has successfully implemented the Court-approved

---

[1]     The Parties' Class Action Settlement Agreement ("Settlement" or "Agreement") is attached as Exhibit A. Except as otherwise stated herein, all terms shall have the same meaning ascribed to them in the Agreement.

Notice Plan—directly reaching 96.6 % of the Settlement Class—and the deadlines for submitting opt-out requests or objections to the Settlement have expired. The reaction of the class has been tremendous: a well above-average number of class members have submitted claims, not one person has objected to any of the Settlement's terms, and only 10 consumers have requested to be excluded. The fact that no one in the active and aggressive professional objector bar has opposed this Settlement is particularly noteworthy and further testament to its strength and fairness.

To recap, Rodale has agreed to create a $4.5 million non-reversionary common Settlement Fund, from which Settlement Class Members' claims, notice and administrative expenses, any Court-awarded attorneys' fees, and any incentive award to Coulter-Owens will be paid. In terms of individual relief, currently nearly 53,000 Settlement Class Members have submitted a valid claim form, making the individual payments presently around $44. And as to the Class and public more generally, in order to curb the challenged practices in the future, the Settlement also prevents disclosure of Michigan consumer's reading choices and requires Rodale to update its privacy policy to provide clear information about its third-party data sharing practices that will keep class members better apprised of how their information is being used. (Agreement § 2.2(b).) Put simply, the Settlement achieves the goals of the lawsuit: to obtain monetary relief for the class for their

VRPA claims and to stop the unauthorized disclosure of their magazine preferences.

Further, the excellent relief afforded to the class through this Settlement becomes more clear when compared with other settlements involving privacy statutes. That is, most statutory privacy cases that settle provide only nominal indirect payments through *cy pres*—a form of recovery that is plainly less desirable than this Settlement's actual cash payments to class members. *See infra*, at § V.A. But an apples-to-apples comparison demonstrates that this Settlement is also in line with the two other VRPA settlements in this District that received final approval. *See Halaburda v. Bauer Publ'g Co.*, No. 12-cv-12831, Dkt. 68 (E.D. Mich. Jan. 6, 2015) (granting final approval to a VRPA settlement that provided an estimated $75 to claimants and similar injunctive relief); *Kinder v. Meredith Corp.*, No. 14-cv-11284, Dkt. 81 (E.D. Mich. May 18, 2016) (granting final approval to a VRPA settlement that provided claimants with an estimated $50 cash payment and similar injunctive relief).

For these reasons, and those that follow, the Settlement is fair, reasonable, and adequate, warranting this Court's final approval.

## II.   BACKGROUND

A brief summary of the underlying facts and law provides context for the instant motion and highlights the significant result achieved for the Settlement

3

Class.

### A.    Plaintiff's Allegations

Rodale publishes some of the most widely circulated "lifestyle" magazines in the United States, including *Prevention*, *Men's Health*, and *Women's Health*. (Plaintiff's Class Action Complaint, Dkt. 1 ["Compl."], ¶ 1.) Coulter-Owens is a Michigan resident who, along with other readers comprising the Settlement Class, subscribes to one of Rodale's magazines. (*Id.*) Coulter-Owens alleges that Rodale sells its subscribers' personal information (including their full names, titles of the magazines to which they subscribe, and home addresses)—along with such supplemental information as gender, age, ethnicity, income, net worth, religion, charitable donations, and health conditions—to various data mining companies and other third parties in order to supplement its sales and advertising revenues. (*Id.* ¶ 2, 39.) Plaintiff alleged that Rodale discloses this information without subscriber consent, and subscribers remain unaware that their personal details have been sold. (*Id.* ¶ 42.) As a result, Coulter-Owens brought claims under the VRPA, which prohibits the disclosure of records regarding the purchase of written materials absent consent, as well as breach of contract and unjust enrichment by virtue of Rodale's profiting from the sale of this information.

### B.    The Road to the Settlement Agreement.

The Parties' Settlement was only reached after nearly two years of contentious litigation including dispositive motion practice, the near-completion of discovery, and two mediations with a well-respected retired federal judge.

This case began on July 9, 2014, when Coulter-Owens filed a class action lawsuit alleging that Rodale's disclosure of its customers' personal information to third parties without permission violated the VRPA, as well common law breach of contract and unjust enrichment. (*See* Dkt. 1.) On September 18, 2014, Rodale moved to dismiss Coulter-Owens's claims in their entirety, (dkt. 14), which after full briefing was denied as to Coulter-Owens's VRPA and unjust enrichment claims. (Dkts. 21, 23, 27.) Rodale then filed its answer on February 25, 2015, which denied the material allegations of the complaint and raised 16 affirmative defenses. (Dkt. 29.) Soon after, the Parties submitted a proposed discovery plan to the Court, exchanged initial disclosures, and commenced discovery. (Dkt. 31; Declaration of Ari J. Scharg ("Scharg Decl."), a copy of which is attached hereto as Exhibit B, ¶¶ 3-4.)

Over the next eight months, the Parties engaged in substantial class and merits discovery, which included the production and review of thousands of documents, numerous meet-and-confer conferences when disputes arose regarding that discovery, and the depositions of several witnesses, including Coulter-Owens, a corporate representative from Rodale, and a corporate representative from

Acxiom (one of the data mining companies that Rodale allegedly sold Michigan subscribers' information to). (*Id.* ¶ 4.) Coulter-Owens also served discovery on third parties, which led to the production of additional documents and the scheduling of additional depositions. (*Id.*)

As discovery was coming to a close, the Parties agreed to attempt to settle this case through mediation. On November 4, 2015, the Parties participated in a formal mediation with former Chief Judge of the Northern District of Illinois, Judge James F. Holderman (Ret.) of JAMS in Chicago, Illinois. The Parties did not reach a settlement at this first mediation. However, Judge Holderman was able to lead them to common ground on certain key terms such that all agreed that a second mediation was warranted. (*Id.* ¶¶ 5-6.) The second mediation took place at JAMS on December 2, 2015. (*Id.* ¶ 7.) After a second day of mediation with Judge Holderman and several additional rounds of arm's-length discussions, the Parties reached an agreement on the principal terms of this Settlement. (*Id.*).

The Court granted preliminary approval of the Settlement on May 3, 2016, subject to minor modifications to the proposed notice and review of certain highlighted concerns at the Final Approval Hearing. (Dkt. 44.)

## III.  TERMS OF THE SETTLEMENT AGREEMENT.

The terms of the Settlement agreement are briefly summarized as follows:

### A.  Class Definition.

As part of preliminary approval, this Court certified a Settlement Class, defined as "all persons with Michigan street addresses who, between July 1, 2009 and the date of Preliminary Approval, purchased a subscription to a Rodale publication." (Dkt. 44; Agreement § 1.3.)

### B.   Monetary Relief.

Defendant has established a $4.5 million non-reversionary Settlement Fund, from which each Settlement Class Member who submits a valid claim shall be entitled to a *pro rata* share, after payment of notice and administrative expenses, any attorneys' fees, and any incentive award. (Agreement § 2.1.)

### C.   Prospective Relief.

For a period of four years from May 3, 2016 (the date of entry of the Court's Preliminary Approval Order), and in accordance with the Settlement Agreement, Rodale will not disclose any Michigan customers' subscription information to third-party companies without the prior express written consent of the affected subscriber. (Agreement § 2.2(a).) The Settlement also requires the addition of key language to Rodale's Privacy Policy so as to inform consumers about the nature of its data-sharing practices. (*Id.* § 2.2(b).)

### D.   Additional Relief.

In addition, Defendant has also agreed to provide the following:

### 1.   Payment of notice and settlement administration expenses.

7

Rodale has paid, and will continue to pay, all notice and administration expenses out of the Settlement Fund. (Agreement §§ 1.28, 1.32, 2.1.)

### 2. Payment of incentive award, attorneys' fees, and expenses.

Rodale has agreed to pay an incentive award from the Settlement Fund to Coulter-Owens to compensate her for her service as Class Representative, as well as reasonable attorneys' fees. (*Id.* §§ 1.32, 8.1, 8.3.) Both awards are subject to this Court's approval, which Coulter-Owens has moved for separately. (*See* Dkt. 49*.)

### E. Release.

In exchange for the relief described above, Rodale and all of its related and affiliated entities will receive a full release of all claims arising out of or related to Rodale's disclosure of its Michigan customers' magazine subscription information. (Agreement §§ 1.24-1.26.)

## IV. THE NOTICE PLAN COMPORTS WITH DUE PROCESS.

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v.*

*Gen. Motors Corp.*, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) (citation omitted).

That said, Due Process does not require that every class member receive notice, and a notice plan is reasonable if it reaches at least 70% of the class. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding notice plan to be "the best notice practicable" where combination of mail and publications notice reached 81.8% of the class); *Gascho v. Glob. Fitness Holdings, LLC*, — F.3d —, No. 14-3761, 2016 WL 2802473, at *2, *18 (6th Cir. May 13, 2016) (finding that notice and claims processes were appropriate where 90.8% of notices were successfully delivered to addresses associated with class members). The notice plan here easily

9

meets these standards, as it provided direct notice via a postcard or email to 96.6 % of the Settlement Class.

The Court's preliminary approval order directed the Parties to make two minor adjustments to the proposed Notice Plan, but otherwise approved the Plan and found that it met the requirements of Rule 23 and due process. (Dkt. 44 at 7-8.) The Parties have complied with the Court's Order, and the Notice Plan has now been fully carried out by professional settlement administrator Epiq Systems, Inc. (*Id.*) Pursuant to the Settlement, Rodale provided the Class List to Epiq, which contained 611,948 records comprising the names, last known mailing addresses, and last email addresses of the Settlement Class Members. (Agreement § 4.1(a); Declaration of Richard Bithell ("Bithell Decl."), a copy of which is attached as Exhibit C, ¶¶ 5-11.)  Using the Class List, Epiq determined that there were 611,757 unique records and sent 327,226 postcards via First Class U.S. Mail and 283,630 emails to addresses it determined were valid. (*Id.* ¶¶ 5-17.) Epiq tracked returned postcards and undelivered email and determined that direct notice reached 96.6 % Settlement Class. (*Id.* ¶¶ 15-17.)[2] In accordance with the requirements of Rule 23 and Due Process, the notice contained essential information regarding the Settlement, including the terms of the Agreement and individual options for

---

[2]     Epiq also notified the appropriate state and federal officials pursuant to CAFA, 28 U.S.C. §§ 1715. (Bithell Decl. ¶4.)

opting-out, objecting, or submitting a claim. (Agreement § 4.2.) The notice also directed Settlement Class Members to the Settlement Website, an online resource center where they can submit their claims via a short and simple electronic form, as well as access and review important court filings, deadlines, and frequently asked questions. (Bithell Decl. ¶¶ 9-10, 19; Agreement § 4.1(d).)

Given that the Court-approved notice reached 96.6 % of the Settlement Class directly (a rate that far surpasses others approved within this Circuit and endorsed by the Federal Judicial Center) and provided Settlement Class members with comprehensive information about the Settlement, the requirements of Due Process and Rule 23 are met.

## V.   THE SETTLEMENT WARRANTS FINAL APPROVAL.

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). The Sixth Circuit recognizes a strong "federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

To evaluate the fairness, reasonableness, and adequacy of a settlement

agreement at final approval, seven factors are relevant: (1) the likelihood of

success on the merits; (2) the public interest; (3) the complexity, expense, and

duration of future litigation; (4) the opinions of class counsel; (5) the amount of

discovery completed; (6) the reaction of absent class members, and (7) the risk of

fraud or collusion (the "*UAW* factors"). *UAW*, 497 F.3d at 631 (citing *Granada*

*Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)); *Gascho*, 2016 WL

2802473, at *5; *Williams*, 720 F.2d at 922-23. The court need only analyze the

factors that are relevant to the settlement agreement and may weigh "particular

factors according to the demands of the case." *Leonhardt*, 581 F. Supp. 2d at 832

(citations and internal quotations omitted). Although the factors may be assessed

individually, inquiry into one factor often overlaps with another. *Gentrup v.*

*Renovo Servs., LLC*, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011).

As described below, each factor confirms the fairness, reasonableness, and

adequacy of the instant Settlement, and supports final approval.

### A.    Plaintiff's Likelihood of Success on the Merits, Balanced Against the Benefits of Settlement, Weighs in Favor of Final Approval.

Under the first—and most important—*UAW* factor, the plaintiff's likelihood

of success on the merits is weighed against the immediate benefits of settlement.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th

Cir. 2011); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522-23 (E.D.

Mich. 2003). This inquiry does not require the Court "to decide the merits of the

case or resolve unsettled legal questions," but the fairness of a proposed settlement cannot be judged "without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 632 (citation omitted). Ultimately, the question is whether the class's interests "are better served if the litigation is resolved by the settlement." *Leonhardt*, 581 F. Supp. 2d at 832-33 (citation omitted); *see also Lasalle Town Houses Coop. Ass'n v. City of Detroit*, 2016 WL 1223354, at *6 (E.D. Mich. Mar. 29, 2016) (granting final approval where "class members would bear the risk of continued litigation with the potential for an adverse result."). The likelihood that Coulter-Owens will succeed on the merits thus serves as a "gauge" against which the benefits of settlement are measured. *Poplar Creek*, 636 F.3d at 245 (citing *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Here, although Coulter-Owens believes that her VRPA claim is strong—and that she would prevail at summary judgment or trial—success in litigation is of course never guaranteed. (Scharg Decl. ¶ 11.) Without final approval of the instant Settlement Agreement, there remain several ways in which the class could wind up empty-handed. As outlined in Coulter-Owens' motion for reasonable fees, (dkt. 49), she would still face challenges on the merits of Rodale's 16 affirmative defenses, including that the VRPA is inapplicable here because Rodale does not sell magazines "at retail" and that the statute's statutory damage scheme is

unconstitutional. (*See* dkt. 29.) Further, whether the magazine subscriptions were sold at retail may have proven to be dispositive here, as it was in a similar class action that is presently on appeal to the Sixth Circuit. *See Coulter-Owens v. Time, Inc.*, No. 12-CV-14390, 2016 WL 612690, at *5 (E.D. Mich. Feb. 16, 2016), appeal docketed No. 16-1313. Second, while Rodale is unlikely to successfully argue that statutory damages are unconstitutional per se, there is a fair likelihood that any substantial aggregated statutory damages verdict would be reduced on due process concerns. *Compare Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) ("the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues.") *with Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 443 (2001) ("I continue to believe that the Constitution does not constrain the size of punitive damages awards.") (Thomas, J., concurring).

Finally, it is significant that this Settlement was reached while the Michigan Legislature considered whether to amend relevant sections of the VRPA for the first time in over two decades. 2016 PA 92, M.C.L. § 445.1711, *et seq*. In light of certain proposed amendments, continued litigation could have been short-circuited and the Settlement Class could have walked away with nothing. In fact, defendants in other VRPA cases have argued for retroactive application of the enacted amendments (and, in turn, argued that the amendments limit plaintiffs' ability to

recover under the Act), and Rodale doubtless would have raised this issue too. While Coulter-Owens is confident that she would have prevailed on any such challenges made in this case, *see Boelter v. Hearst Commc'ns, Inc*., No. 15 CIV. 3934 (AT), 2016 WL 3369541, at *4-5 (S.D.N.Y. June 17, 2016) (recognizing that "retroactivity is not favored in the law" and that the amendments to the VRPA, specifically, did not apply retroactively)—i.e., given her position that the amendments are not expressly retroactive as required by the Michigan Supreme Court, *Frank W. Lynch & Co. v. Flex Techs.* 624 N.W.2d 180, 182 (Mich. 2001) ("[S]tatutes are presumed to operate prospectively unless the contrary intent is clearly manifested.")—the VRPA amendments nevertheless constitute a distinct risk to her and the other Settlement Class members' ability to recover.

Against the backdrop of uncertainty, the benefits of the Settlement are obvious and unmistakable. The Settlement provides real and immediate cash relief, entitling each Settlement Class Member to a *pro rata* share of the $4.5 million Settlement Fund, which, again, is consistent with and in many cases greatly exceeds other settlements approved under similar circumstances. While the exact *pro rata* recovery available to claiming members of the Settlement Class has not yet been determined because the deadline to submit claims hasn't passed, currently Settlement Class Members with valid claims will receive $44. Although Class Counsel initially estimated a $100 payment to each Settlement Class Member

based on a claims rate of 5% (which is consistent with both their experience and Sixth Circuit precedent), the unexpectedly high response rate means that Class Members will receive less than anticipated. But a $44 recovery is still an exceptionally fair and reasonable result in line with both the other VRPA settlements in the Sixth Circuit and consumer settlements more generally, *see, e.g.*, *Gascho*, 2016 WL 2802473, at *18 (approving consumer class action settlement with *pro rata* payouts between $5 and $75); *Halaburda v. Bauer Publ'g Co.*, No. 12-cv-12831, Dkt. 68 (E.D. Mich. Jan. 6, 2015) (granting final approval to a VRPA settlement that provided an estimated $75 to claimants); *Kinder*, No. 14-cv-11284, Dkt. 81 (granting final approval to a VRPA settlement that provided claimants with an estimated $50 cash payment); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 781 (N.D. Ohio 2010) (approving consumer class action settlement with an estimated payout "of, on average, in excess of $36" per class member).

The reasonableness of the monetary relief offered becomes apparent when it is compared to other privacy settlements involving similar statutes, almost all of which have settled along the lines of indirect payments to *cy pres* rather than for actual money going to claiming class members. For example, a high profile privacy case against Facebook resolved the claims of tens of millions of Facebook users under both the Electronic Communications Privacy Act ($10,000 in statutory

damages) and the federal analogue to the VRPA, the Video Privacy Protection Act ($2,500 in statutory damages), in exchange for the creation of a $9.5 million dollar *cy pres*-only fund (i.e., pennies per class member—paid indirectly). *See Lane v. Facebook, Inc*., 696 F.3d 811, 820-22 (9th Cir. 2012). Likewise, Google settled the privacy claims of tens of millions of Gmail users under both the Electronic Communications Privacy Act (providing for $10,000 in statutory damages) and the Stored Communications Act ($1,000 in statutory damages) in exchange for an $8.5 million *cy pres*-only fund (again, pennies per class member—paid indirectly). *See In re Google Buzz Privacy Litig.,* No. C 10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011). And while the class in *Fraley v. Facebook* directly received money in exchange for releasing claims under California's right of publicity statute, which provides for $750 in statutory damages, the recovery there was only $15 per class member. *See* 966 F. Supp. 2d 939 (N.D. Cal. 2013).

Although statutory damages of $5,000 per claim are available under the VRPA, monetary amounts "are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) (quotation omitted); *see also UAW*, 2006 WL 891151, at *17 ("there is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

17

As such, the monetary relief available here is more than fair and reasonable.

Often overshadowed, but equally important, the Settlement delivers meaningful prospective relief, whereby over the next four years, Rodale will not disclose Michigan subscriber information to third parties without the subscriber's prior express written consent. (Agreement § 2.2.) This relief aligns perfectly with the goals of the VRPA and represents an exceptional result for the Settlement Class. *See, e.g.*, *Halaburda v. Bauer Publ'g Co.*, No. 12-cv-12831, Dkt. 69 (E.D. Mich. Jan. 15, 2015) (finally approving a class action in similar VRPA litigation and finding that "the more important provisions of the settlement agreement are the provisions according equitable relief and a cessation of the disclosure altogether for this period of four years by the defendants.").

Where, as in this case, Plaintiff's likelihood of success on the merits is tempered by significant risks, the benefits of settlement—both prospective and monetary—are readily apparent. The first *UAW* factor thus supports final approval.

### B.    In Protecting Reader Privacy and Conserving Judicial Resources, the Settlement Serves the Public Interest.

A settlement that serves the public interest is likely to be found fair, reasonable, and adequate. *In re Cardizem*, 218 F.R.D. at 530. Settlements may serve the public interest by advancing a statute's goals or by conserving judicial resources. *See id.*; *see also In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *12 (E.D. Mich. Dec. 20, 1996) ("Voluntary resolution [of complex

18

class action litigation] is in the public interest"); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007). ("Public policy generally favors settlement of class action lawsuits") (citing *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 143 (W.D. Ky. 1992)). To serve the public interest, a settlement agreement that seeks to enforce a statute "must be consistent with the public objectives" that the legislature sought to attain. *Williams*, 720 F.2d at 923 (citations omitted).

The instant Settlement furthers the objectives sought by the Michigan Legislature when it enacted the VRPA 27 years ago. The VRPA recognizes that "one's choice in videos, records, and books is nobody's business but one's own." House Legis. Analysis Section, H.B. No. 5331. The Settlement serves the legislature's goal of protecting an individual's right to privacy in the written materials she chooses to read by preventing the disclosure of magazine reading preferences by Rodale without express written consent. (*See* Agreement § 2.2.) It also advances the public interest by conserving judicial resources, avoiding "notoriously difficult and unpredictable" class action litigation that can consume the court's time and money. *See In re Cardizem*, 218 F.R.D. at 530; *see also Leonhardt*, 581 F. Supp. 2d at 839. To be sure, if the Settlement does not receive the Court's final approval, the case's complex and lengthy litigation would continue and would require significantly more motion practice and potential appeals. *See Sims v. Pfizer, Inc.*, 2016 WL 772545, at *9 (E.D. Mich. Feb. 24,

2016) (finally approving settlement and finding that "absent settlement, all class members would be subject to the uncertainties, hardship, and delay attendant to continued litigation."). Here, there is no need to deviate from the "strong public interest in encouraging settlement of complex class action litigation." *See In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011) (citation omitted).

The Settlement serves the public interest because it furthers the underlying purpose of the VRPA—to protect the privacy of consumers' personal reading habits—and conserves judicial resources. The second factor therefore weighs in favor of final approval.

### C.     The Complexity, Expense, and Duration of Further Litigation Favors Final Approval.

The third *UAW* factor requires the consideration of the complexity, expense, and duration of further litigation, and the comparison of those risks to the relief afforded under the settlement. *See, e.g.*, *In re Cardizem*, 218 F.R.D. at 523; *UAW*, 2006 WL 891151, at *18 (citation omitted). Final approval is favored in cases such as this one, where the parties are "likely [to] expend significant time and money litigating [a] case through class certification, dispositive motions, trial, and appeal," further chipping away at the amount—and possibility—of class recovery. *Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160, 164 (S.D. Ohio 2014); *see also In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio

20

2001) (citation omitted).

Undoubtedly, further litigation in this case would produce substantially more motion practice, including an adversarial motion for class certification and motions for summary judgment. Expert witnesses would need to be deposed by each side, and *in limine* and *Daubert* hearings would likely be held in order for the Court to consider any conflicting evidence and make findings about the reliability of experts' methodologies. Such a hard-fought case would ultimately lead to a trial, thus guaranteeing that the matter would not conclude any time in the near future.

The continuation of this case would also involve challenging legal issues arising under the VRPA that have yet to be fully resolved, including whether Rodale's sale of magazines were "at retail" and whether the recent amendments are retroactive. Whichever party loses will certainly appeal. Any one of these obstacles could strip the class of recovery, making further litigation "a high stakes 'zero sum' undertaking." *Leonhardt*, 581 F. Supp. 2d at 833.

Absent final approval of the instant Settlement, the complexity, expense, and duration of further litigation will threaten a positive outcome for the class. Accordingly, the third *UAW* factor supports final approval.

### D.   The Stage of the Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval.

The fourth *UAW* factor examines the stage of the proceedings and the amount of discovery that has taken place. *Thacker v. Chesapeake Appalachia*,

*L.L.C.,* 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek*

*Dev. Co.*, 636 F.3d 235 (concluding that where parties had litigated for nearly two

years and had "engaged in significant investigation and discovery," they could

"frankly evaluate the merits of and risks inherent in their respective cases" and

"determine an appropriate settlement value"). Although "[t]here is no precise

yardstick to measure the amount of litigation that the parties should conduct before

settling," the case should be developed enough to raise the court's decision "above

mere conjecture." *In re Rio*, 1996 WL 780512, at *13 (citation and internal

quotations omitted). What is imperative is not the amount of formal discovery

completed, but whether the parties and the court have sufficient information to

make a reasoned decision with respect to settlement. *See IUE-CWA v. Gen. Motors*

*Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("That the parties conducted their

investigation through informal discovery . . . is not unusual or problematic, so long

as they and the court have adequate information in order to evaluate the parties'

relative positions.").

    The considerable amount of class and merits discovery completed in this

case ensured that the parties and the Court had sufficient information to assess the

strengths and weaknesses of the case and an appropriate settlement. The Parties

exchanged extensive formal written discovery, and Class Counsel reviewed

thousands of pages of documents in the process. (Scharg Decl. ¶ 4.) Class Counsel

also conducted Rule 30(b)(6) depositions of corporate representatives from Rodale and Acxiom, and defended the deposition of Coulter-Owens. (*Id*.)

Because counsel for both Parties are well equipped at this advanced stage of the litigation with the information needed to make a reasoned decision about settlement, the fourth *UAW* factor weighs in favor of final approval.

### E.    The Opinion of Class Counsel Supports Final Approval.

The fifth *UAW* factor assesses the opinion of experienced counsel regarding the settlement. *UAW*, 497 F.3d at 631; *Williams*, 720 F.2d at 922-23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Counsel's judgment is entitled to significant weight. *Leonhardt*, 581 F. Supp. 2d at 837. The deference afforded to counsel's opinion depends on both their skill and experience, *Int'l Union v. Ford Motor Co.*, 2006 WL 198463, at *25 (E.D. Mich. July 13, 2006), as well as "the amount of discovery completed and the character of the evidence uncovered." *Williams*, 720 F.2d at 923.

Here, Class Counsel have significant experience litigating consumer class actions of similar size, scope and complexity—particularly in the consumer privacy realm, which experience includes other VRPA cases. (*See* Scharg Decl. ¶ 8; Edelson PC Firm Resume, a copy of which is attached to the Scharg Decl. as Exhibit B-1.). *See, e.g.*, *In re Netflix Privacy Litig.*, No. 11-cv-00379, dkt. 59 (N.D.

Cal. Aug. 12, 2011) (appointing Edelson as class counsel and noting that Edelson PC "specializes in class actions relating to consumer technology and privacy issues" and that the "firm's significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class"); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014) ("appoint[ing] Jay Edelson of Edelson PC . . . as class counsel"); *In re Facebook Privacy Litig.*, No. 10-cv-02389, Dkt. 69 (N.D. Cal. Dec. 10, 2010) (noting that the attorneys at Edelson are "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 495 (N.D. Ill. Nov. 23, 2015) (noting that Edelson PC attorneys are "highly experienced class action litigators"); *Halaburda*, No. 12-cv-12831, Dkt. 68 (appointing Edelson PC attorneys class counsel in a similar VRPA class action that settled on comparable terms); *Kinder v. Meredith Corp.*, No. 14-cv-11284, Dkt. 76 (E.D. Mich. Feb. 5, 2016) (same).

Class Counsel believe that the Settlement is fair, reasonable, and adequate. (Scharg Decl. ¶¶ 11-14.) In light of their experience—and bolstered by the significant amount of discovery completed in this case—their opinion in support of final approval satisfies this *UAW* factor.

### F.    The Reaction of Absent Class Member Favors Final Approval.

The sixth *UAW* factor weighs in favor of approval where the majority of class members have elected to remain in the settlement class without objecting. *In re Cardizem*, 218 F.R.D. at 527. A small number of opt-outs and objections "are to be expected in a class action" and do not impact the Settlement's fairness. *Id.* (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). Here, nearly 53,000 people have already filed valid claims, not a single Settlement Class Member objected to the Settlement, and only 10 opted out (a mere .001 % of the Settlement Class).[3] (Epiq Decl. ¶¶ 20, 22.) This exceptional participation rate and lack of objections from the Settlement Class leave no question that the class members view the Settlement favorably, which further underscores its fairness. This *UAW* factor easily supports final approval.

### G.   The Settlement is Free from Fraud and Collusion.

The final *UAW* factor ensures that the settlement is the "product of arm's-length negotiations as opposed to collusive bargaining." *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501-02 (E.D. Mich. 2000) (citation omitted); *see also*

---

[3]   Of the 10 requests for exclusion received by the Settlement Administrator, 7 failed to contain all the information requested and 1 was untimely. (Bithell Decl. ¶¶ 20-21.) Plaintiff nevertheless believes their requests to be excluded should be honored.

*Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) (explaining that arm's-length negotiations conducted "by adversarial parties and experienced counsel" are indicative of a settlement's fairness, reasonableness, and adequacy.) The absence of fraud or collusion is presumed unless there is evidence to the contrary. *IUE-CWA*, 238 F.R.D. at 598; *see also UAW*, 497 F.3d at 628; *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. at 295 (recognizing that courts "presume the absence of fraud or collusion in class action settlements" and finding that the exchange of data through litigation and the absence of allegations of fraud or collusion indicated that the settlement was the result of a good-faith negotiation) (quoting *Leonhardt*, 581 F.Supp.2d at 838). Finally, "[t]he participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey*, 617 F. Supp. 2d at 673.

This Settlement is the product of negotiations conducted at arm's-length by experienced counsel representing adversarial parties and there is absolutely no evidence of fraud or collusion. (Scharg Decl. ¶ 10.) As the record in this case reflects, the parties have vigorously pursued their own interests and positions throughout the litigation, (dkts. 14, 21, 23), further confirming the absence of fraud or collusion. *See Leonhardt*, 581 F. Supp. 2d at 838. And when the Parties were finally ready to discuss the possibility of settlement, all of their negotiations

occurred only at arm's length, including through two mediations with Judge Holderman. (Scharg Decl. ¶¶ 5-7, 10.)

The arms'-length nature of these negotiations is not altered by the fact that the Settlement permits the Court to award Coulter-Owens a modest $5,000 service award to compensate her for the over 80 hours of service she provided to ensure the class she represented obtained meaningful relief. (*See* Dkt. 49.) As explained in detail in Coulter-Owens's request for a service award, here, an incentive award of $5,000 is not a bounty or a windfall, and is in fact reasonable to compensate Ms. Coulter-Owens for the significant amount of time she invested in obtaining a $4.5 million common fund for the class (*Id.* at 30-32 (discussing *In re Pampers Dry Max Litig.*, 724 F.3d 713 (6th Cir. 2013) and Coulter-Owens' substantial service throughout this litigation).) Modest service awards—like the one sought here—are routinely approved in this District and do not create either an adequacy issue nor indicate collusion when, as here, the award compensates for time spent and the class is obtaining real relief. (*Id.*)

Accordingly, the Settlement is entirely free from fraud or collusion and the final *UAW* factor supports granting final approval.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order (i) granting final approval to the Settlement Agreement, and (ii) awarding

such other and further relief as the Court deems reasonable and just.

Dated: August 24, 2016                    Respectfully submitted,

                                          **ROSE COULTER-OWENS**, individually
                                          and on behalf of the Settlement Class,

                                          By: /s/ Ari J. Scharg
                                                    One of Plaintiff's Attorneys

                                          Jay Edelson
                                          jedelson@edelson.com
                                          Ari J. Scharg
                                          ascharg@edelson.com
                                          Benjamin S. Thomassen
                                          bthomassen@edelson.com
                                          EDELSON PC
                                          350 North LaSalle Street
                                          13th Floor
                                          Chicago, Illinois 60654
                                          Tel: 312.589.6370

                                          Henry M. Scharg
                                          hmsattyatlaw@aol.com
                                          LAW OFFICE OF HENRY M.  SCHARG
                                          718 Ford Building
                                          Detroit, Michigan 48226
                                          Tel: 248.596.1111

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, hereby certify that on August 24, 2016, I served the above and foregoing ***Plaintiff's Motion for Final Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system.

/s/ Ari J. Scharg