## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROSE COULTER-OWENS, et al.,

      Plaintiffs,

v.                                Case No. 14-12688

RODALE, INC.,

      Defendant.

_____/

## ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' PETITION FOR ATTORNEY FEES, EXPENSES, AND INCENTIVE AWARD; AND (2) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs filed the instant "Petition for Attorney Fees" and "Motion for Final Approval of Class Action Settlement" seeking approval of a negotiated settlement between the Parties as well as attorney fees equaling 33.3% of the common fund. (Dkts. ##49, 51.) This court granted preliminary approval of the settlement but requested additional briefing as to the request for attorney fees and the proposed incentive payment to the named Plaintiff. (Dkt. #44.) A hearing was held on September 7, 2016. For the reasons stated below and at the hearing, the court grants final approval of the class settlement and grants attorney fees, although at a lower rate than requested.

## I. BACKGROUND

Plaintiffs are a class of Michigan consumers who purchased subscriptions to certain magazines published by Defendant. Plaintiffs allege that to supplement their advertising revenues, Defendant collects and, without consent, sells their subscribers'

personal information in violation of Michigan's Video Rental Privacy Act, M.C.L. §§ 445.1712, *et seq.* ("VRPA"). Plaintiffs are also pursuing a similar case against a different defendant, currently pending appeal before the Sixth Circuit. *Coulter-Owens v. Time Inc.*, No. 16-1380 (6th Cir. 2016).

The Parties have negotiated a proposed settlement including the creation of a $4.5 million non-reversionary common Settlement Fund, which will provide funding for: 1) the class notice; 2) administrative expenses; 3) attorney fees; 4) the incentive award to the named Plaintiff; and 4) the satisfaction of claims made by class members. (Dkt. #51-2.) Per the brief in support of the settlement's approval, "nearly 53,000 Settlement Class Members have submitted a valid claim form, making the individual payments presently around $44," although that number may have increased in the intervening weeks. (Dkt. #51.) The Parties estimate that 96.6% of the Settlement Class has received notice, no class member has objected, and only ten consumers requested exclusion from the settlement. *Id.* Additionally, the proposed settlement prevents further disclosure of the class members' reading choices by Defendant and requires it to update its privacy policy to inform subscribers as to how their information is being used. *Id.* The settlement also contemplates a $5,000 "incentive award" to the named Plaintiff, who Plaintiffs claim performed over 80 hours worth of work in litigating this case, including a five-hour deposition. (Dkts. ##49-3, 49-5.)

Plaintiffs have also moved for the approval of attorney fees in the amount of 33.3% of the common fund, totaling $1,498,500. Plaintiffs' Counsel operate a leading class action firm in Chicago, (Dkt. #49-4), and provided the court with a firm resume and a table listing the firm employees who worked on the case, their title at the firm, years of

2

experience, and the number of hours each employee worked multiplied by an hourly billing rate. (Dkt. #49.) As a lodestar cross-check, Plaintiffs' Counsel calculate thereby that they would have normally accrued $546,719 in fees for 1,175.2 hours of work, then reason that this reflects that the requested fees represent a "low multiplier of just over a [sic] 2.7[.]"[1] *Id.* They have not provided an itemized description of the tasks performed or the time taken to complete each task.

## II. STANDARD

The district court "must carefully scrutinize" whether named Plaintiffs and class counsel have lived up to their fiduciary obligations to the class. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). The court must assess whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The district court considers seven factors in making this finding: '(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest'" *Pelzer v. Vassalle*, No. 14-4156, 2016 WL 3626825, at *5 (6th Cir. July 7, 2016) (citing *Int'l Union, UAW v. Gen Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

The district court must also carefully assess requests for attorney fees. Factors that the court will "[o]ften but by no means invariably" address when doing so include "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services

---

[1] Plaintiffs also claim that they expected to incur an additional $75,000 in fees from the time their petition for fees was filed through final approval of the settlement and claims administration along with $16,892 in general expenses. (Dkt. 49-3.)

on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352, (6th Cir. 2009) (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

### III. DISCUSSION

### A. Proposed Settlement

### 1. The Risk of Fraud or Collusion

"Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 21, 2013) (quoting *Int'l Union v. Ford Motor Co.*, No 05-74730, 2006 WL 1984363, at *26 (E.D. Mich. July 13, 2006)). Nothing in the record suggests fraud or collusion. Therefore this factor favors approval of the settlement.

### 2. The Complexity, Expense and Likely Duration of the Litigation

"A court may not withhold approval simply because the benefits . . . are not what a successful plaintiff would have received in a fully litigated case." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983). Settlements should reflect "a compromise which has been reached after the risks, expense and delay of further litigation have been assessed." *Id.* As discussed in more detail below, this case is not one in which success would necessarily be swift or even likely. Though the factual issues are not as complex

4

as those at work in some other cases involving significant expert testimony such as securities litigation or products liability, the Parties have to date already spent considerable litigation resources and would continue to do so absent approval of this settlement. This factor weighs in favor of approving the settlement, though only slightly.

### 3. The Amount of Discovery Engaged in by the Parties

The Parties have engaged in significant discovery. In addition to written discovery, Plaintiffs took two Rule 30(b)(6) depositions and had prepared for a third prior to settlement. Defendants deposed the named Plaintiff for five hours. In light of these facts, this factor favors approval of the settlement.

### 4. The Likelihood of Success on the Merits

"[C]lass-action settlements affect . . . the interests of the unnamed class members who by definition are not present during the negotiations." *Dry Max*, 724 F.3d at 715. Courts must guard against "the danger that the parties and counsel will bargain away the interest of unnamed class members in order to maximize their own." *Id.* The court "must specifically examine what the unnamed class members would give up in the proposed settlement, and then explain why–given their likelihood of success on the merits–the tradeoff embodied in the settlement is fair to the unnamed members of the class." *Shane Group, Inc., v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016).

The monetary payments to class members are undoubtedly beneficial. Plaintiffs estimate that class members will receive approximately $44 each, depending on the number of class members who file claims. If anything this likely *overcompensates* individual claimants with respect to their actual damages, which would in most cases be

5

non-existent or nominal. It is practically *de rigueur* in this age of social media to consent to the dissemination of one's otherwise private information. *See generally* Daniel J. Solove, *Introduction: Privacy Self-Management and the Consent Dilemma*, 126 HARV. L. REV. 1879, 1880 (2013) (discussing the difficulty of individuals making "informed, rational choices about the costs and benefits of consenting to the collection, use, and disclosure of . . . personal data"). The complaint, on the other hand, pleads the availability of statutory damages of $5,000 per claimant. This perhaps represents wishful pleading as the likelihood of recovering this full amount is vanishingly small as discussed in more detail below.

At the same time, the non-monetary relief is less impressive. The relevant information of class members has presumably already been disseminated and cannot be clawed back. That Defendant will stop selling this information for four years absent consent by the subscribers through what is almost sure to be rote acceptance of Defendant's updated privacy policy is cold comfort. Plaintiffs explain that this is valuable relief in part because it "increases the transparency of Defendant's third-party data-sharing practices." (Dkt. #49.) Since most subscribers will likely never read this privacy policy, such assertions paint something close to the "fictive world" described by the Sixth Circuit in *Dry Max*:

> "where harried parents of young children clip and retain Pampers UPC codes for years on end, where parents lack the sense (absent intervention by P & G) to call a doctor when their infant displays symptoms like boils and weeping discharge, where those same parents care as acutely as P & G does about every square centimeter of a Pampers box, and where parents regard Pampers.com, rather than Google, as their portal for important information about their children's health."

724 F.3d at 721.

6

A sober analysis suggests, however, that this settlement is on balance fair. Success in this case was by no means guaranteed. In *Coulter-Owens v. Time, Inc.*, an identical case brought by the same named Plaintiff against a different defendant, the court granted summary judgment because it concluded that the subscriptions were not sales made "at retail" as required under the language of the statute. No. 12-cv-14390, 2016 WL 612690, at *4-5 (E.D. Mich. Feb. 16, 2016) (pending appeal). Michigan has since amended the statutes at issue in this case so significantly that the question of the retroactivity of this change has inspired a challenge on appeal as to whether Article III standing even exists in the first place. *See generally Coulter-Owens v. Time Inc.*, No. 16-1380 (6th Cir. 2016);[2] *but see Boelter v. Hearst Communications, Inc.*, Nos. 15 Civ. 3934 (AT), 15 Civ. 9279 (AT), 2016 WL 3369541, at *4-6 (S.D. N.Y. June 17, 2016) (finding under similar facts  that the Michigan VRPA amendments did not apply retroactively to plaintiffs' claims). Absent the approval of this settlement, the Sixth Circuit's determination in *Time* could all but extinguish Plaintiffs' hopes of succeeding in the instant case. Moreover, application of the VRPA to magazine subscriptions as opposed to video rentals is somewhat novel. The court determines that the likelihood of success on the merits is low, and balancing the rewards of this settlement against what class members "would give up" favors approval.

### 5. The Opinions of Class Counsel and Class Representatives

---

[2]The Sixth Circuit recently issued an order denying an appeal based on the jurisdiction of the district court but invited briefing as to the presence of Article III and statutory standing.

In cases such as this where class counsel is experienced and diligent, their "endorsement of the settlement is entitled to significant weight." *Sheick v. Automotive Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010) (quotations omitted). In both their briefs and at the hearing on this issue, class counsel has stated that this settlement is fair to the class. This factor favors approval of the settlement.

### 6. The Reaction of Absent Class Members

Absent class members have not given this court any reason to question the fairness of this settlement. None have lodged any objections with this court, and at the time of the motion's filing, only three had requested exclusion from the class. During the hearing only one unnamed class member attended. He observed the proceedings with his attorney and, when asked by the court, stated that he agreed with the settlement. Nor does anything in the record gives the court insecurity about the effectiveness of notice to absent members. Thus, the reaction of absent class members favors approval of the settlement.

### 7. The Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (citation omitted). Nothing in the record suggests a contrary

8

public interest at play, and no class member has challenged the settlement. Therefore, this factor also favors approval.

None of the relevant factors militates against approval of the proposed settlement. This court will therefore grant the motion for final approval.

## B. Fees and Expenses

Plaintiffs claim that the fees would be justified because of the significant amount of work performed on the case, the complexity and risk involved, the value of the relief to the class, and the fact that Plaintiffs voluntarily reduced their fee request to 33.3% of the common fund even though the proposed settlement would have permitted them to receive 40%. It is true that Plaintiffs' Counsel accepted this case on a purely contingent basis, (Dkt. #49-3), and the court does not discount the fact that Plaintiffs here pursued a novel application of Michigan Law that was by no means certain to result in recovery. The fact that another such case is currently pending appeal is a testament to the uncertainty of obtaining relief. Society has an interest in incentivizing the plaintiffs' bar to investigate and litigate such cases through the award of contingent fees. *In re Delphi Corp. Securities, Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 503 (E.D. Mich. 2008) ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this benefits society.") (citation omitted). This is especially true in cases such as this where the attorneys on both sides are skilled.

Plaintiffs have performed significant work to arrive at their settlement. As described above, the Parties engaged in fulsome discovery. They also participated in

9

two sessions of mediation through the JAMS program. *Id.* The value of the relief to the class members does not weigh strongly in either direction, however. For the reasons discussed above, the monetary relief is significant, and the non-monetary relief is not.

Still other factors weigh against the proposed award. The court is not convinced that this case is one of great complexity. No expert witnesses were used, and the factual issues of the case (*i.e.*, whether Plaintiffs were subscribers and whether their information was sold without their consent) are straightforward. On the other hand, Plaintiffs pursued this as a class action, which is inherently more complex than a normal suit. More problematic is the contention that the requested fees are justified because Plaintiffs' Counsel had initially negotiated an eyebrow-raising 40% fee within the proposed settlement but now request 6.7% less in their petition. This in no way speaks to the value supplied to the class members who were absent from the bargaining table when the settlement was negotiated.

The court in *Blue Cross* decried what it viewed as "Bentley rates" of more than $700 per hour. 825 F.3d at 310. In this case, the highest suggested hourly rate is $725. (Dkt. #49.) Moreover, taking the total attorney fees requested by Plaintiffs, $1,498,500, and dividing it by the number of hours Plaintiffs' Counsel claims to have billed as of the time it filed its brief in support of its motion for fees, 1,175.2, results in a simple average billing rate of approximately $1,275 per hour. Even calculating an average of the suggested billable rates by dividing the proposed total fees, $546,719, by the hours worked, 1,175.2, results in an average hourly rate of over $465 per hour. This represents an incredibly high rate for the Michigan market. *See* Lawrence H. Stiffman, *A*

*Snapshot of the Economic Status of Attorneys in Michigan*, 82 MICH. B.J. 20 (November, 2003). This is especially true in light of the fact that, based on the table provided by Plaintiffs' Counsel, nearly half of the total billable hours were performed by associates and law clerks with experience of 5 years or less.[3]

Even worse, the lack of any description of the tasks performed or the number of hours used to perform these tasks makes it almost impossible for the court to provide meaningful oversight. For example, the court is left to guess how many of the 1,175.2 hours reflect time spent on work of limited value to the class itself, such as Plaintiffs' Counsel's own petition for fees. The absence of these records "heighten[s] the district court's concern about whether the settlement is fair to the unnamed members of the class." *Blue Cross*, 825 F.3d at 310. The Sixth Circuit reversed an award of fees where:

> "[C]lass counsel provided no backup whatsoever—no time records, no descriptions of work done—in support of their hours spent working on the case. Instead, class counsel provided the district court with a single page of documentation for each firm, listing only the employee names, titles, rates, hours, and—by multiplying the rates and hours—the total lodestar for that firm."

*Id.*

That description matches almost exactly the records provided in the instant case. However, such a paucity of supporting documentation is not always fatal to a motion for fees. In *Gascho v. Glob. Fitness Holdings, LLC*, the Sixth Circuit affirmed the award of fees in the absence of similar records. 822 F.3d 269, 281 (6th Cir. 2016). Calling it a

_____

[3]This case was filed two years ago, so presumably the level of experience of each employee has grown over that period, but no information to that effect was provided.

"close question" as to whether the provided information was sufficient to justify the

award, the court was satisfied in the reasonableness of the rates because:

> "[C]ounsel 'averred under penalty of perjury that the hours expended and costs incurred in the litigation were reasonably necessary to prosecute the action,' the hourly rates were 'consistent with those in the market' and the court's experience, class counsel had not billed for the significant number of attorney hours expended after the date of settlement, and despite vigorous objections to other aspects of the settlement, the objectors had not argued that class counsel's number of hours worked or hourly rates were unreasonable."

*Id.*

The instant facts are distinguishable from those in *Gascho*. Though Plaintiffs'

Counsel did not expressly aver that the "hours expended and costs were reasonably

necessary," they did explain that the total number of billable hours had been adjusted

for time deemed unnecessary or duplicative. (Dkt. #49-3.) This assertion is of

comparably limited utility; it provides no indication of how that determination was made

or what the size of this downward reduction was. The hourly rates contained in Plaintiffs'

brief are high for the Michigan market, and more so is the "simple average rate"

calculated against the full proposed award as discussed above. Plaintiffs have not given

an outline of hours billed since settlement, but they suggest in support of their petition

that fees associated with these tasks would total $75,000 in addition to the records of

work already provided. (Dkt. #49-3.)  Favorably, however, no class member has

objected to the settlement or the proposed fees.

It is well established that a district court "has discretion to decide whether an

upward or downward adjustment is warranted in order to reach a reasonable fee

award." *Van Horn v. Nationwide Prop. & Cas. Ins. Col*, 436 F. App'x 496, 499 (6th Cir.

2011) (citation omitted). As for the billing records, "[w]here the documentation is inadequate, the district court may reduce the award accordingly." *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 552-53 (6th Cir. 2008) (citation omitted). No doubt remains that the billing records here are inadequate. At the same time the court recognizes that where a firm operates on a contingent fee basis from the outset, as is the case here, it is incentivized by its own expected return on the case to economize attorney hours that could be spent elsewhere.

This court will award attorney fees in the amount of 25% of the $4,500,000 common fund, totaling $1,125,000. Such a percentage comports with our precedent within the Sixth Circuit. *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016) (collecting cases) (pending appeal). This reflects a lodestar cross-check multiplier of about 2.05 times the estimated hourly billing amount of $546,719 supplied by Plaintiffs' Counsel. This multiplier is also consistent with precedent, *see In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 767-78 (S.D. Ohio 2007) ("Most courts agree that the typical lodestar multiplier" in a large class action "ranges from 1.3 to 4.5"), and in any event is not drastically lower than the 2.7 multiplier requested by Plaintiffs' Counsel.

Plaintiffs have also requested $16,892 in litigation expenses stemming from "document preparation and travel." (Dkt. #49-3.) "When deciding whether the requested expenses should be compensable, courts consider whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases." *Id.* at 244 (citation

13

and quotations omitted). Because document production and travel are indeed such normal expenses, Plaintiffs are entitled to the award.

## C. Incentive Award

"Our court has never approved the practice of incentive payments to class representatives, though in fairness we have not disapproved of the practice either." *Dry Max*, 724 F.3d at 722 (citation omitted).  Such awards "are like dandelions on a on an unmown lawn–present more by inattention than by design." *Id.* The Sixth Circuit has expressed a "sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). "To ensure that these amounts are not in fact a bounty, however, counsel must provide the district court with specific documentation–in the manner of attorney time sheets–of the time actually spent on the case by each recipient of an award." *Blue Cross*,  825 F.3d at 311. No such specific documentation was provided in the instant case to support the award, which counsels strongly against approval.

"[W]e should be most dubious of incentive payments when they make the class representatives whole, or (as here) even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *Dry Max*, 724 F.3d at 722 (citation omitted). Here the proposed incentive award of $5,000 exceeds the amount that any class member is likely to receive as well as the named Plaintiff's actual damages. It also matches the statutory damages enshrined in the VRPA prior to its recent amendment.

14

2:14-cv-12688-RHC-RSW   Doc # 54   Filed 09/29/16   Pg 15 of 15   Pg ID 866

Thus the proposed incentive payment would more than make Plaintiff whole. Still, the court will not ask Plaintiff to go essentially without compensation for her work on behalf of the class and will award an incentive payment of $2,000. *See Liberte Capital Group v. Capwill*, No. 5:99 CV 818, 2007 WL 2492461, at *2 (N.D. Ohio Aug. 29, 2007) (awarding reduced proposed incentive awards to representative plaintiffs).

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Plaintiffs' Petition for Attorney Fees, Expenses, and Incentive Award, (Dkt. # 49), is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Final Approval of Class Settlement, (Dkt. #51), is GRANTED.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 29, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 29, 2016, by electronic and/or ordinary mail.

 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522